[Civ. No. 6733.    Third Dist.    July 18, 1942.]

ROBERT POWELL, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

Elmer W. Armfield and Arthur B. Eddy for Appellant.

G. D. Schilling, D. Bianco, Louis Ferrari, C. H. White, Rich, Weis & Carlin and Hugh L. Preston for Respondents.

THE COURT.—The plaintiff, Robert Powell, has appealed from a judgment which was rendered against him in a suit for conversion of money. The lienholder of certain warehouse receipts for a quantity of grain delivered them to the Bank of America National Trust and Savings Association, at Woodland, with written instructions to sell the grain to designated dealers for a specified sum of money, and to pay said lienholder from the proceeds of sale the sum of $240.09, and to remit the balance directly to the owner, L. M. Miller. The bank sold the grain and paid the lienholder said sum of $240.09, as directed, but refused to remit to the owner any portion of the balance of the proceeds of sale. On the contrary, the bank retained and applied the balance of said money toward the satisfaction of a judgment, upon which the statute of limitations had expired, which the bank held against L. M. Miller and others. It does not appear that L. M. Miller was, at any time, a customer or a depositor in that bank. After the application of that fund to the satisfaction of the judgment, and the refusal of the bank to pay the same to L. M. Miller, he assigned and transferred his claim therefor to J. M. Miller and Robert Powell. This suit for conversion of the funds was then commenced.

On account of the death of one of the plaintiffs, J. M. Miller, which occurred before the judgment was rendered, the defendant bank moved this court to dismiss the appeal, on the ground that the cause abated as to the interest of J. M. Miller, upon his death, for failure to substitute in his place another party plaintiff. Thereupon, the plaintiff Powell, who in the meantime had acquired from the estate of Mr. Miller his undivided interest in that chose of action, moved this court to substitute himself to also represent that interest in the suit. Those motions were presented to this court separately from the appeal on its merits. Both motions were determined adversely to the bank, in an opinion which was recently filed (*Miller* v. *Bank of America,* 52 Cal. App. (2d) 512 [126 P. (2d) 444]), to which reference is made for a more particular statement of facts in that regard.

From the record we have gleaned the following facts: Mr. L. M. Miller was the owner of 1,667 sacks of barley which he deposited in a warehouse in Yolo County, for which he held warehouse receipts, subject to a lien to secure the payment of $240.09 owing to Chico Production Credit Association. By agreement between L. M. Miller and the Chico association,

these warehouse receipts were delivered to the Bank of America at Woodland on August 14, 1936, with written directions to sell the barley to Gill & Gill, grain dealers, for the sum of $2,186.89, to pay the lienholder, Chico Production Credit Association, the sum of $240.09, and to remit direct to L. M. Miller the balance of the purchase price. The written directions contained the following language:

"You are authorized and requested to deliver these warehouse receipts to Gill and Gill, grain dealers, when you have collected for our account the amount of $2,186.89. From this amount you are to remit to this association the sum of $240.09, plus interest at the rate of 3c per day from August 17 to the date of our receipt of payment.

"The balance of the proceeds are to be remitted direct to L. M. Miller, Knights Landing, California. The above collection is to be net to this association."

At the time when these warehouse receipts were sent to the bank for sale of the grain and collection and remittance of the proceeds pursuant to the foregoing written directions, the bank was the owner and holder of a judgment which was rendered against L. M. Miller and others, April 5, 1928, for the sum of $3,569.17, no part of which was paid. The judgment had never been renewed, and the statute of limitations (§ 336, Code Civ. Proc.) had run against it. Neither L. M. Miller nor the Chico association was a customer or depositor of the bank.

On August 18, 1936, the bank sold the grain for $2,186.89, from which sum it paid the Chico association the full amount of its lien of $240.09, leaving in the possession of the bank a balance of $1,946.74, which, without the knowledge or consent of the owners thereof, the bank applied toward the payment of its outlawed judgment of $3,569.17. L. M. Miller promptly demanded of the bank payment to him of said sum of $1,946.74, which was refused. August 29, 1936, for value received, L. M. Miller sold and assigned that claim jointly to the original plaintiffs in this action, J. M. Miller and Robert Powell. This suit for conversion of the funds was commenced against the bank and Chico association, on April 21, 1937. The cause was tried by the court sitting without a jury. At the close of the evidence a nonsuit was granted as to the defendant Chico association. Findings were adopted favorable to the defendant bank. Judgment was accordingly ren-

dered to the effect that plaintiffs take nothing by this action. From that judgment this appeal was perfected.

The chief issue to be determined on this appeal is whether, under the circumstances of this case, the Bank of America National Trust and Savings Association was authorized under section 3054 of the Civil Code, or otherwise, to appropriate the proceeds remaining in its possession which were derived from the sale of the grain belonging to L. M. Miller, and apply it toward the satisfaction of the judgment which it held against L. M. Miller and others, upon which the statute of limitations had expired.

We are of the opinion the findings and judgment are not supported by the evidence for the reason that the owner of that fund was neither a customer nor a depositor of the bank which acquired the money pursuant to specific instructions to remit the balance direct to L. M. Miller. Under no reasonable construction of the written instructions may it be said that the bank was authorized to deposit the money in the bank to the credit of L. M. Miller, or to create the relationship of debtor and creditor between them. That being true, it becomes immaterial that the statute of limitations had expired against the judgment held by the bank.

From the written instructions which were given to the bank by the Chico Production Credit Association, it is clear that the bank was not authorized to deposit any portion of the proceeds of sale of the grain, either to the credit of the association or to the credit of the owner of the grain, L. M. Miller. On the contrary, the bank was clearly instructed to pay to the lienholder, association, the sum of $240.09, and to remit the balance of the proceeds direct to L. M. Miller. Not only did the bank violate its clear instructions, but it arbitrarily applied the balance of the proceeds, in the sum of $1,946.74, towards the satisfaction of an outlawed judgment which it held against L. M. Miller and others. It does not even appear that either Miller or the association was a customer or depositor of the bank. This conduct on the part of the bank amounted to a wrongful conversion of the balance of the funds contrary to the trust established by the written instructions. The bank held no lien upon the funds, pursuant to section 3054 of the Civil Code, under the circumstances of this case. Miller was not a customer of the bank, and the funds were not held in the relationship of

debtor and creditor, but only as trustee or agent for the fulfillment of its written instructions.

The principle applicable to the right of a bank to offset a debt due to the bank by the application of proceeds derived from sales of property or the collection of paper pursuant to specific instructions to remit the same to the owner thereof, is aptly stated in 8 Zollman on Banks and Banking, page 402, section 5621, as follows:

"The receipt by a bank of paper for collection and such receipt *for collection and remittance* are thus on entirely different planes. Where the receipt is for collection merely, in view of the general custom of collecting banks to mingle the proceeds of collections, such proceeds become the property of the collecting bank, and the relationship of debtor and creditor arises between it and the owner. On the other hand, a commercial paper sent to a bank *for 'collection and remittance' clearly creates the relationship of principal and agent,* not that of creditor and debtor. *The collecting bank becomes an agent until the check is collected, and then becomes a trustee of the proceeds,* and can avoid such relationship and create that of debtor and creditor only by consent." (Italics added.)

The preceding text is supported by numerous authorities, many of which are cited by the appellant. While there is apparently some conflict of authorities regarding the question as to whether a deposit of paper with a bank for "collection and remittance" constitutes a relationship of agency, bailment or trust, the majority of the cases so hold. In an elaborate note upon that subject, which is found in 90 American Law Reports, page 6, it is said in the heading to the paragraph on page 15 thereof:

"The rule supported by the majority of the cases in which paper has been sent to a bank for 'collection and remittance' or 'collection and return' is that the relationship of the parties to the proceeds of the collection is not that of creditor and debtor, but one of agency, trust, or bailment."

It is true that the relationship between a bank and one who deposits with it a check or other paper to be collected or transferred for cash will be determined *by the intention of the parties* as shown by the circumstances of the transaction or by the instructions of the depositor. In support of its contention that the relationship between the bank and L. M. Miller, with respect to the proceeds derived from the

sale of the grain represented by the warehouse receipts, was that of debtor and creditor, the respondent cites 7 American Jurisprudence, page 504, section 696. That section, however, contains the following statement:

"If they intended that the proceeds should be remitted immediately upon the receipt thereof, or if in any other way it can be shown that the parties intended that the proceeds of the paper as well as the paper itself should remain the property of the owner of the paper, such intention will control and the bank will not take title to the proceeds."

In the present case it is not contended that Chico Production Credit Association, the lienholder of the warehouse receipts, was a creditor of the bank. The association had no authority to deposit in the bank the proceeds of the sale of barley to the credit of L. M. Miller. The instructions to the bank were just the contrary. The bank was directed to sell the grain and send to the Chico association, the lienholder, the sum of $240.09, and that "the balance of the proceeds are to be remitted direct to L. M. Miller." Certainly that language may not be construed to authorize the bank to deposit the balance of that fund to the credit of L. M. Miller and thus create the relationship of debtor and creditor between them.

Nor is the language of the late Mr. Justice Cardozo, which is found in the case of *Jennings* v. *United States Fidelity & Guaranty Co.,* 294 U. S. 216 [55 S. Ct. 394, 79 L. Ed. 869, at page 872, 99 A. L. R. 1248] which is quoted by the respondents, in conflict with the foregoing statement of law. That quoted language reads:

"*In the absence of tokens of a contrary intention,* the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own." (Italics added.)

The basis of the statement of the court in the preceding quotation is that the bank becomes the debtor of the depositor, after the proceeds of the check or paper are received by it, only "in the absence of tokens of a contrary intention." In the present case, the token of a contrary intention is clearly expressed in the written instructions which were furnished to the bank.

We find nothing in *Gonyer* v. *Williams,* 168 Cal. 452 [143

Pac. 736], or any of the other authorities relied upon by the respondent, in conflict with what we have previously said regarding the relationship of the bank to one who delivers to it paper, such as warehouse receipts for grain in storage, with specific written instructions to collect or sell the property and remit the proceeds to the owner thereof.

In the case of Gonyer, *supra,* the plaintiff, who for several years had been a regular depositor in Kern Valley Bank, deposited therein on May 11, 1911, a check in his favor for the sum of $300, drawn upon another bank. No instructions accompanied the deposit of that check. According to custom, the check was immediately credited to his account. It appears that the Kern Valley Bank was then insolvent, but the depositor had no knowledge of that fact. That money was not applied as an offset to a debt due to the bank. The depositor owed the bank no debt. Upon failure to pay that amount on demand, suit was brought to recover the money on the theory that it was held by the bank in trust. The trial court so held. On appeal it was properly determined that, under the circumstances of that case, "the transaction was not one which created the relation of principal and agent but rather that of creditor and debtor." In conclusion the court said: "The contract was for the collection of the draft and the manner of disposing of the assets was clearly one resting in general usage." There is no doubt that principle is true in the absence of specific directions to the contrary, such as existed in the present case. The syllabus of that case correctly announces the well-known principle upon which that case was determined, as follows:

"Where a regular depositor in a bank in the ordinary course of business, deposits with it a check drawn in his favor on another bank and bearing his endorsement in blank, the title to the check is transferred to the depositary, and upon its placing the amount of the check to the credit of the depositor on its books the relation of debtor and creditor is created between them."

Contrary to the facts of that case, a banking relationship of debtor and creditor did not exist between the bank and either L. M. Miller or the Chico association. Neither of them was given credit on the books of the bank. Moreover, the warehouse receipts were delivered to the bank with specific written instructions to sell the grain represented thereby,

and, after paying a specified sum to the lienholder, to *"remit direct* to L. M. Miller" the balance of the proceeds. Under such definite instructions there is no room for application of the "bank custom" of crediting an account and creating the relationship of debtor and creditor, as was done in the Gonyer case. That case has no application to the facts of this suit.

■ The court properly granted the motion for nonsuit in favor of the co-defendant, Chico Production Credit Association. It was a mere holder of the warehouse receipts as collateral security of its claim for payment of a debt of $240.09. The association did not convert or misappropriate any part of the proceeds of sale of the grain. The receipts were delivered to the bank with specific directions to pay direct to L. M. Miller the balance of the proceeds. These directions were given to the bank in writing with the consent of Miller. This suit involves only the conversion of the balance of the purchase price. It does not involve the satisfaction of the lien for $240.09 which was paid with the consent of all parties to the association. The association clearly was not a party to the misappropriation of the balance of that fund. It was converted by the bank in direct violation of the written instructions which were signed by the association. The judgment of nonsuit is affirmed.

The judgment in favor of the bank is reversed and the court is directed to render judgment in favor of the appellant, Robert Powell, for the sum of $1,946.74, together with interest thereon at the rate of 7 per cent per annum from August 18, 1936, and costs of appeal.

A petition for a rehearing was denied August 15, 1942, and respondent Bank of America's petition for a hearing by the Supreme Court was denied September 14, 1942.