[L. A. No. 7670.  In Bank.—May 12, 1923.]

## F. R. LEUSCHEN, Petitioner, v. THE SMALL CLAIMS COURT et al., Respondents.

[1] SMALL CLAIMS COURT—JURISDICTION—TORTS.—Under section 927 of the Code of Civil Procedure, enacted May 16, 1921 (Stats. 1921, p. 117), the jurisdiction of the small claims court includes actions *ex delicto* as well as *ex contractu.*

APPLICATION for a Writ of Prohibition to prevent a small claims court from trying an action in tort. Writ denied.

The facts are stated in the opinion of the court.

David R. Faries, John R. Berryman, Jr., and J. Allen Davis for Petitioner.

Chas. D. Pennock, *in pro. per.*, for Respondents.

Percy A. Breen and Percy E. Towne, *Amici Curiae.*

WILBUR, C. J.—This is an original proceeding in prohibition to prevent the respondent from proceeding with the trial upon a claim of $30.10 damages due to alleged negligence of the petitioner. Section 927 of the Code of Civil Procedure, enacted May 16, 1921 (Stats. 1921, p. 117), provided as follows:

"All justices of the peace shall exercise the jurisdiction conferred by this title and while sitting in the exercise of said jurisdiction shall be known and referred to as the small claims court; provided, that the jurisdiction of such justices court, when sitting as a small claims court, shall be confined to cases for the recovery of money only where the amount claimed does not exceed fifty dollars and the defendant named is a resident of the township or city and county in which the action is to be maintained."

It is claimed by the petitioner that the jurisdiction of the justices of the peace when sitting as a small claims court does not include claims for tort. It is clear that an action for tort is included in the phrase "cases for the recovery of money only," and unless there is something

in the statute which limits or modifies this provision, it is clear that the respondent is authorized to proceed in the matter now pending before him, as a justice of the peace sitting as a small claims court. It is claimed that the affidavit filed by the party instituting the proceeding in the so-called small claims court indicates that it was not the intention of the legislature to include in the jurisdiction of the small claims court actions for tort. This claim is based upon the formal affidavit by which the proceedings were instituted, which requires the claimant to make oath "that the defendant is indebted to the plaintiff in the sum of $——; that this affiant has demanded payment of said sum; that the defendant refused to pay the same and no part thereof has been paid." Section 927h (added by Stats. 1921, p. 119) provides that: "No formal pleading, other than the said claim and notice, shall be necessary and the hearing and disposition of all such actions shall be informal, with the sole object of dispensing speedy justice between the parties." By section 927g (added by Stats. 1921, p. 119) it is provided that the parties shall not be represented by any party other than themselves.

Assuming that the word "debt" applies only to claims arising *ex contractu,* it is argued that the form of affidavit is inapplicable to actions for tort. We think, however, that this is too narrow a view of the scope of the legislation. For some purposes it has been held that a judgment resulting from a tort is a debt. See *Ex parte Prader,* 6 Cal. 239, wherein it was held a violation of the constitution of 1849 to imprison a defendant for the nonpayment of a judgment for an assault and battery. It is, we think, too narrow a view of the legislation and its purpose to hold that the use of the word "indebted" in informal and nontechnical affidavits filed to initiate the proceeding is a controlling factor in the determination of the jurisdiction.

The movement for small claims courts is not new (3 Blackstone, p. 81). In 1605 the English parliament passed an act "for the recovering of small debts, and for the relieving of poor debtors, in London." This statute provided a summary method of collecting debts of less than forty shillings, by "tradesman, victualler or labouring man." This act provided "That if an action of debt, or action upon the case upon an *assumpsit* for the recovery of any

debt, to be sued or prosecuted against any the person or persons aforesaid, in any of the King's courts at *Westminster*, or elsewhere, out of the said court of requests, it shall appear to the judge or judges of the court where such action shall be sued or prosecuted, that the debt to be recovered by the plaintiff in such action doth not amount to the sum of forty shillings, and the defendant in such action shall duly prove, either by sufficient testimony, or by his own oath, to be allowed by any the judge or judges of the said court where such action shall depend, that at the time of the commencing of such action such defendant was inhabiting and resiant in the city of *London*, or the liberties thereof, as above, that in such case the said judge or judges shall not allow to the said plaintiff any costs of suit, but shall award that the same plaintiff shall pay so much ordinary costs to the party defendant, as such defendant shall justly prove before the said judge or judges, it hath truly cost him in defence of the said suit."   (3 Jac. I, c. 15.) A similar statute was passed in 1741 (14 Geo. II, c. 10). This statute provided: "That from and after the twenty-fourth day of *June,* one thousand seven hundred and forty one, it shall and may be lawful to and for every citizen and freeman of city of *London,* and every other person and persons inhabiting, or that shall hereafter inhabit, within the said city or the liberties thereof; and all and every person or persons who do or shall rent or keep any shop, shed, stall or stand, or seek a livelihood in the said city or liberties thereof, which now have or hereafter shall have any debt or debts owing unto him, her or them, not exceeding the sum of forty shillings, by any person or persons whatsoever inhabiting or seeking a livelihood within the said city or liberties thereof, during their respective inhabiting within the said city or liberties thereof, or seeking a livelihood as aforesaid, to cause such debtor or debtors to be warned or summoned by any of the bedels, or officers of the said court of requests for the time being, by writing left at the dwelling-house, lodgings, shop, shed, stall, or stand, or any other place of seeking a livelihood of such debtor or debtors, or by any other reasonable warning or notice to be given to the said debtor or debtors, to appear before the commissioners of the said court of requests, holden in the *Gwildhall* of the said city, and that the said commission-

ers, or any three of them, or more, shall after such summons as aforesaid have power and authority by virtue of this act, from time to time to set down, or cause to be set down such order or orders, between such party or parties, plaintiff or plaintiffs, and his, her or their debtor or debtors, defendant or defendants, touching such debts not exceeding the said sum of forty shillings in question before them, as they shall find to stand with equity and good conscience, all such order or orders to be registered in a book as they have been accustomed to be; which order or orders so made as well the party plaintiff as the debtor or defendant shall observe, perform and keep in all points; any thing in any act contained to the contrary thereof in any wise notwithstanding.''

These acts undoubtedly applied only to actions *ex contractu*, but the present movement for small claims courts apparently originated in Chicago (Journal of American Judicature Society, vol. 2, p. 23). The plan there adopted was to transfer all the litigation in which thirty-five dollars or less was claimed to one justice of the municipal court, ''on a special calendar to be heard in a separate branch to be known as the Small Claims branch.'' These small claims, of course, included claims *ex delicto* as well as *ex contractu*. Apparently it was the success of the Chicago court and of the small claims court in Portland, Oregon, that brought about the new legislation for such court in this state. An original draft of the bill is found in the transactions of the Commonwealth Club of California, volume 15, number 3, page 165. Assemblyman Rosenshine, who introduced the bill in the state legislature, discussed the subject on page 127 of the same publication. It appears from this discussion that the main purpose of the legislation was to provide a similar procedure for all litigation involving small claims and no distinction is suggested between actions *ex contractu* and *ex delicto*.

The state of Massachusetts in providing for the small claims court authorized justices of the district courts, etc., to make rules providing for a simple, informal, and inexpensive procedure for the determination of claims in the nature of contracts or torts other than slander or libel in which the plaintiff does not claim as debt or damages more than thirty-five dollars (Mass. Stats. 1920, p. 553. See, also, Gen. Laws. Mass. 1921, vol. 2, c. 218, sec. 21, p. 2352).

The editor of the Journal of the American Judicature
Society, in commenting upon the statute recently adopted
in California (issue of June, 1921, vol. 5, p. 29), in sum-
ming up the California law, said: "It will amount, in
operation, substantially to this: that a person having a
claim less than fifty dollars will proceed under the small
claims act if he has confidence in the justice of the peace,
otherwise he will follow the customary procedure and de-
mand a jury."

[1] We are satisfied that this summary is a correct con-
struction of the act and that the jurisdiction of the court
included actions *ex delicto* as well as *ex contractu.*

In discussing a somewhat similar statute the supreme
court of Minnesota, in *Flour City Fuel & Transfer Co.* v.
*Young,* 150 Minn. 452 [185 N. W. 934] said:

"The theory from the standpoint of a small debtors'
court is that litigation by the common-law method over
small claims is wasteful, and fails to bring practical justice
because of an expense out of proportion to the amounts
involved, the time of the parties consumed in the litigation
when they should be engaged otherwise, and the attendant
delay in reaching a result. The legal profession notes the
waste more clearly than laymen. It is recognized that to
some extent defendants decline to pay knowing that the
smallness of the claim practically insures against compulsory
payment. It is recognized that some persons having small
claims submit to a denial of payment because they cannot
incur the expense and await the termination of the or-
dinary trial. Under the act the expense is put upon the
taxpayers of the city, and the trial is speeded. It is all
over in a few days. The effort is to avoid contention
and a prolonged controversy, and lawyers are excluded.
While it is recognized that litigation without expense may
encourage the assertion of doubtful or unfounded claims,
or claims that might as well go unasserted, the thought of
the statute is that on the whole justice is best subserved
by a summary consideration of small controversies without
expense to the parties. This is not the place to discuss the
character and history and policy of such courts. We are
interested in them here only as they affect the legal ques-
tions presented. A study of them is given under the title
of 'Justice and the Poor,' in Bulletin No. 13, Carnegie
Foundation, 41–67. See, also, *Renaud* v. *State Board,* 124

Mich. 648 [83 Am. St. Rep. 346, 51 L. R. A. 458, 83 N. W. 620] ; 26 Harv. Law Rev. 302, 310; 64 Pa. Law Rev. 356; Bulletin No. 8, Am. Jud. Soc. In an article in 1 Minn. Law Rev. 107, written shortly prior to the passage of the Minneapolis act, and in 2 Minn. Law Rev. 491, written shortly after, William R. Vance, then dean of the University Law School, writes of such courts, their purposes and working, and gives their historical background; and he mentions the constitutional question which now engages our attention.'' In Olson's Oregon Laws, 1920, volume 1, page 900, section 948—33, providing for the organization of a department of the district court, to be known as the small claims department, it is provided that said courts "shall have jurisdiction, but not exclusive, in cases for the recovery of money only where the amount claimed does not exceed twenty dollars ($20)," etc. The section in regard to making the claims differs from that in California, for it provides for a statement in a brief and concise form of the nature and amount of said claim, etc. (Sec. 948—37.) The law of Kansas upon the subject (Gen. Stats. Kan. 1915, sec. 3319) gives jurisdiction to the small debtors court of small debts and amounts not exceeding twenty dollars. In this court the plaintiff appears before the judge personally and states his case orally. (Sec. 3321.)

It is apparent that the legislature of California intended to formulate a method of procedure for small claims of all kinds, which would obviate the expense and delay due to ordinary methods of litigation and that this system was intended to operate for the rich and poor alike. We have freely referred to publications and reports with reference to small claims courts, not because they should influence us in interpreting doubtful provisions of the statute, but merely to show that their obvious construction agrees with the general purpose indicated by such publications and the statutes of other states growing out of the demand for more simple, less expensive, and more speedy decisions of cases involving small amounts.

Writ denied.

Kerrigan, J., Myers, J., Lawlor, J., Waste, J., Lennon, J., and Seawell, J., concurred.

Rehearing denied.