[No. AO17714. First Dist., Div. Three. Mar. 29, 1983.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. THE SMALL CLAIMS COURT FOR THE NORTHERN JUDICIAL DISTRICT OF SAN MATEO COUNTY, Defendant and Respondent; GRETCHEN EISENBERG et al., Real Parties in Interest and Respondents.

## COUNSEL

George Agnost, City Attorney, Donald J. Garibaldi, Harold J. McElhinny, Samuel R. Miller, James A. Blake and Morrison & Foerster for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Christine Motley, Deputy District Attorney, for Defendant and Respondent.

Stephen R. Elias and David W. Brown for Real Parties in Interest and Respondents.

## OPINION

## WHITE, P. J.—

### Statement of the Case

In September 1981 Gretchen Eisenberg et al., real parties in interest in the instant case (hereafter real parties), filed over 170 individual claims in small claims court against the City and County of San Francisco (hereafter appellant or San Francisco) as the owner and operator of San Francisco International Airport (hereafter airport or S.F.I.A.), alleging that noise from the airport constituted a continuing nuisance causing damages of $750 to each claimant in the 100 days preceding the filing of the claims.[1] These cases were consolidated at the hearing on January 18, 1982. Judgment was entered in favor of 116 plaintiffs and San Francisco has appealed from the judgment to the superior court.

Real parties filed another 183 claims against San Francisco in accordance with Government Code section 911.2 which governs the timing of filing tort claims, and a hearing was set for May 1982. That hearing was postponed

---

[1]The jurisdictional limit for small claims actions at the time these claims were filed was $750. Code of Civil Procedure section 116.2 has since been amended to raise the monetary jurisdiction of all small claims to $1,500. (Stats. 1981, ch. 957, § 1.)

because San Francisco filed a petition for a "writ of prohibition and/or mandamus" in the superior court on April 14, 1982, seeking to restrain the Small Claims Division, Municipal Court, Northern Judicial District, County of San Mateo (hereafter referred to as small claims court) from proceeding to hear and determine the pending airport nuisance actions or any similar cases filed by the real parties against San Francisco arising from the same subject matter. An alternative writ of prohibition was filed on April 19, 1982, ordering respondent small claims court to show cause why a writ should not issue. Real party Gretchen Eisenberg filed a demurrer to San Francisco's petition on May 7, 1982. After an extraordinary writ proceeding the superior court issued an order on May 27, 1982, denying the writ and sustaining without leave to amend the demurrer of real party Gretchen Eisenberg. It is from this order that San Francisco appeals to this court.

## Discussion

This appeal by San Francisco challenges the power of the respondent small claims court to hear a large number of individuals' claims alleging that noise from the S.F.I.A. constitutes a continuing nuisance causing damages in the amount of $750 to each claimant. It arises in the context of the consolidation of these claims by the small claims court.

Appellant San Francisco argues on a number of grounds that these airport nuisance claims should be taken out of small claims court. As we explain in the following discussion of each of the issues raised, we disagree.

1. *Does the small claims court have jurisdiction to hear the airport nuisance cases even though they involve "complex" issues and have been filed in "waves" of "mass claims" against a public entity?*

San Francisco argues vigorously that in spite of the fact that each of the claims filed by real parties in this case alleges damages within the jurisdictional amount set out in the statute in effect at the time they were filed, they are nevertheless outside the jurisdiction of the small claims court because the Legislature never intended "complex" cases to be heard in small claims courts.

Appellant directs our attention to the words "minor civil disputes" in Code of Civil Procedure section 116.1. It is useful to consider this phrase in the context of the whole section, which reads: "The Legislature hereby finds and declares that individual minor civil disputes are especially important to the parties involved and of significant social and economic consequence collectively. The Legislature further finds and declares that in order to resolve such disputes in an expeditious, inexpensive, and fair manner, it is essential to provide a

judicial forum accessible to all parties directly involved in resolving such disputes. The small claims divisions of municipal and justice courts have been established to provide such a forum and thereby comprise a fundamental element in the administration of justice and the protection of the rights and property of individuals. To help fulfill this purpose, it is the intent of the Legislature that the small claims divisions of municipal and justice courts and all rules of the Judicial Council regarding small claims actions shall operate to ensure that the convenience of parties and witnesses who are individuals shall prevail, to the extent possible, over the convenience of any other parties or witnesses."

The language of this section makes it clear that the word "minor" in the first sentence refers to the financial value of the claim to the individual plaintiff. Although this is a recently added section to the statutes governing small claims courts (Stats. 1981, ch. 958, § 1), it is consistent with the view of many courts about the purpose of the small claims courts. From their inception, small claims courts have been held to exist to make it possible for plaintiffs with meritorious claims for small amounts of money, to bring these claims to court without spending more money on attorney's fees and court expenses than the claims were worth. (E.g., see *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 668-670 [105 Cal.Rptr. 785, 504 P.2d 1249]; *Leuschen* v. *Small Claims Court* (1923) 191 Cal. 133, 137 [215 P. 391].)

In a 1926 decision which affirmed the importance and ensured the continuance of small claims courts the Supreme Court said, "The small claims court was created primarily to avoid wasteful litigation and to reduce to a minimum *costs of trial* in cases where the *demands* are small." (*Hughes* v. *Municipal Court* (1926) 200 Cal. 215, 218 [252 P. 575], italics added.) More recently the Court of Appeal in the Second District took substantially the same view when it said: "A small claims process was established to provide an inexpensive and expeditious means to settle disputes over *small amounts.* The theory behind its organization was that ordinary litigation 'fails to bring practical justice' when the disputed *claim is small,* because the *time and expense required by the ordinary litigation process is so disproportionate to the amount involved* that it discourages legal resolution of the dispute." (*Pace* v. *Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476, 478 [161 Cal.Rptr. 622], italics added.)

Moreover it appears from the record in the instant case that it was precisely because the cost of litigating a suit in superior court was prohibitive that real parties decided to use the small claims court. We note that had plaintiffs failed to establish the existence of a nuisance at the outset, there would have been an end to the whole matter. The plaintiff has no right to appeal from a small claims court decision, while the defendant may appeal to the superior court for a trial de novo (Code Civ. Proc., § 117.8), and if still unsuccessful may be granted a

rehearing (*Adamson* v. *Superior Court* (1980) 113 Cal.App.3d 505, 509 [169 Cal.Rptr. 866]) or other relief by extraordinary writ. (*Davis* v. *Superior Court* (1980) 102 Cal.App.3d 164, 168 [162 Cal.Rptr. 167].) This is a system which balances the poor litigant's right to a day in court, with the constitutional right of defendants not to be deprived of property without due process of law. It has been refined over hundreds of years with recurring attention from the courts, legal commentators, and the Legislature. (E.g., see *Brooks* v. *Small Claims Court, supra,* 8 Cal.3d 661; *Leuschen* v. *Small Claims Court, supra,* 191 Cal. 133, 134-137; *Davis* v. *Superior Court, supra,* at p. 167; *Prudential Ins. Co.* v. *Small Claims Court* (1946) 76 Cal.App.2d 379, 382-384 [173 P.2d 38, 167 A.L.R. 820]; Jewell, *Do the Small Claims Courts Portend an Informal Trial Procedure?* (1974) 49 State Bar J. 458; Roodhouse, *Small Claims Court—What Should It Provide and How Well Does It Do So?* (1976) 51 State Bar J. 126; *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 241.) We believe it is constitutionally sound and indispensable to our system of justice.

We simply find no authority for appellant's argument that the airport nuisance cases, which are indeed relatively complex compared to many matters heard in small claims court, should be thrown out for that reason.[2] Indeed appellant cites no case which supports this proposition.

Appellant properly points out that, if the small claims court does act in excess of its jurisdiction, either as to the amount in controversy or the "type of proceeding" involved, it may be restrained by a writ of prohibition and cites *Workmen's Compensation Appeals Bd.* v. *Small Claims Court* (1973) 35 Cal.App.3d 643, 645 [111 Cal.Rptr. 6].) In the *Workmen's Compensation* case, a doctor who had been a witness in a worker's compensation case sued the attorney in small claims court for certain fees. On appeal it was held that the subject matter of the suit, i.e., payment of witnesses in worker's compensation cases, was within the exclusive jurisdiction of the Workmen's Compensation Appeals Board, and a writ of prohibition was issued to restrain the small claims court. (*Id.,* at p. 647.) That decision cannot be used to support the idea that a Court of Appeal may decide *sua sponte* what "type" of cases lower courts may hear. That is a matter for the Legislature. (Cal. Const., art. VI, § 10.)

In the instant case real parties brought their actions alleging nuisance. ■ It is beyond dispute that a small claims court may hear an action in nuisance. And it has recently been established that airport noise may give rise to a nuisance action. (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 101 [160 Cal.Rptr. 733, 603 P.2d 1329], cert.

---

[2]At the extraordinary writ proceedings the judge observed, "I have heard small claims cases and there were some very complex issues involved. Sometimes more complex than at the Trial Court."

den. 449 U.S. 820 [66 L.Ed.2d 22, 101 S.Ct 77]; see also *San Diego Unified Port Dist.* v. *Gianturco* (9th Cir. 1981) 651 F.2d 1306, p. 1313, fn. 16, cert. den. 455 U.S. 1000 [71 L.Ed.2d 866, 102 S.Ct. 1631].)

San Francisco relies on *Sanderson* v. *Niemann* (1941) 17 Cal.2d 563 [110 P.2d 1025]. The question in that case was whether a wife's claim for general damages in a personal injury action arising from an automobile collision was barred by the principle of estoppel[3] since her husband had previously sued for consequential damages in small claims court to recover losses suffered by the marital community as a result of the same accident. The court held that the wife's action was a separate cause of action, and that the small claims judgment had no estoppel effect on the issues of negligence and contributory negligence, essentially because of the informal procedures of the small claims court. (*Id.*, at p. 575.)

While the *Sanderson* case does support San Francisco's point that many procedural devices and protections available in superior court are not available in small claims court, it does not persuade us that the airport cases may not be heard first in the less formal setting. On the contrary the *Sanderson* case is a good illustration of the balancing of interests which has characterized the development of small claims courts. (See cases cited in discussion, *ante,* at pp. 474-475.) *Sanderson* recognizes that small claims courts' decisions have inherent limitations. Both sides must put their cases before the court without an attorney advocate, accept relaxed rules of evidence, and do without the usual discovery process. The plaintiff who chooses this forum has elected to accept these limitations and must accept the court's decision as final. (Code Civ. Proc., § 117.8.) Yet the defendant has the right to appeal to the superior court for a trial de novo. (*Ibid.*) And under *Sanderson,* if there is no appeal from the small claims court's judgment, the parties are protected from any inappropriate extension of that decision, since issues resolved in that court may not operate as an estoppel in a later action.

▮ San Francisco also argues, though it cites no supporting authority, that "broad social policy impact" of the airport nuisance cases also makes them inappropriate for an initial resolution in small claims court. In view of the Legislature's explicit recognition that small claims cases have "significant social and economic consequence collectively" (Code Civ. Proc., § 116.1) this

---

[3]The court in *Sanderson* discusses estoppel as one aspect of res judicata. It observed that res judicata has two aspects. The first is when a judgment "constitutes a complete bar against a second suit on the *same* cause of action, . . ." (*Id.*, at p. 573, italics in original.) The second aspect is when "in a second suit upon a *different* cause of action [the judgment in the first suit] constitutes but an estoppel or conclusive determination of such issues only as were actually raised and litigated." (*Ibid.*, italics in original.) For clarity we refer to this "second aspect" of res judicata as an *estoppel* effect. (See Black's Law Dict. (4th ed. 1968 rev.) p. 650.)

cannot be the basis for a jurisdictional challenge. Indeed the Supreme Court in *City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 532 [183 Cal.Rptr. 86, 645 P.2d 137], judgment vacated and case remanded (1983) 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], proceedings on remand pending (holding that municipalities may not sue for malicious prosecution) said that filing suit against a governmental entity is an aspect of the constitutional right to petition for the redress of grievances. In addition "the right encompasses the act of filing a lawsuit solely to obtain monetary compensation for individualized wrongs, as well as filing suit *to draw attention to issues of broader public interest or political significance.*" (*Id.*, at p. 534, italics added.) The right to access to the courts which the Supreme Court emphatically defends in *Bozek* (*id.*, at p. 533) includes the right of access to small claims courts.

San Francisco also cites *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223], to support the argument that the complexity of the issues should take these cases out of small claims court. In the *San Jose* case, the Supreme Court affirmed the denial of class certification of plaintiffs suing the city alleging nuisance and inverse condemnation because of airport noise. The court reasoned "that a class action cannot be maintained where each member's right to recover depends on facts peculiar to his case" (*id.*, at p. 459), and held that the class failed for lack of community of interest and failure of the named plaintiffs to adequately represent the class. (*Id.*, at p. 461.)

The concerns of the *San Jose* court are significantly different from those raised by the instant appeal. The plaintiffs there, once certified as a class, would remain a class through all levels of appellate review. Any unfairness to defendant resulting from the certification could not be cured on appeal. In the instant case, however, as we have discussed *ante* at pages 474-475, appellant's right to a trial de novo in superior court *is* a cure for the informal procedures of small claims court which appellant decries.[4]

San Francisco objects further to the "mass filing" of these claims, complaining that its ultimate liability may exceed $135,000. It is well settled that the jurisdictional amount limitations apply to each plaintiff's individual claim, so that in a consolidated action the fact that the aggregate amount of the claims is greater does not create a jurisdictional defect. (1 Witkin, Cal. Procedure (2d ed. 1970) pp. 559-560.)

As to San Francisco's complaint that real parties continue to file "waves" of claims, the Supreme Court has said: "If the defendant is not privileged to con-

---

[4]We note that San Francisco does not challenge the *consolidation* of real parties' claims, a position which would be more analogous to that of the City of San Jose in the case cited.

tinue the nuisance and is able to abate it, he cannot complain if the plaintiff elects to bring successive actions as damages accrue until abatement takes place." (*Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 268 [239 P.2d 625].) It is not for this court to determine whether a nuisance exists, nor whether it is permanent or abatable. These are issues for the trial court. Their relevance for the jurisdictional issue before this court is this: unless and until there is a determination that the allegedly excess airport noise is a permanent nuisance which the airport is privileged to continue, the laws of this state allow real parties to file successive actions based on nuisance.

## 2. *Has San Francisco been denied equal protection of the law?*

Appellant argues that because it must defend claims worth over $135,000 in the aggregate without the full panoply of procedural devices and protections available in municipal or superior court, it has been denied equal protection of the law. The assertion that it is "similarly situated" to a defendant in a different type of court, where one plaintiff alone could sue to recover that amount, and where plaintiffs as well as defendants would have more procedural rights, is spurious. There is no "particular burden" imposed on a municipality or municipal public utility by requiring it to defend actions in small claims courts. San Francisco is subject to the same rules as other defendants in small claims courts, including the provisions for consolidation and the method of determining jurisdictional amount.

## 3. *Have real parties violated Code of Civil Procedure section 117.4?*

By their own admission real parties have consulted attorneys and other legal advisers and have met together numerous times to discuss what to do about the noise from S.F.I.A. They contend that all of this activity was constitutionally protected as collective activity undertaken to petition for the redress of grievances. We agree.

Real parties rely on the decision of the United States Supreme Court in *United Transportation Union* v. *Michigan Bar* (1971) 401 U.S. 576 [28 L.Ed.2d 339, 91 S.Ct. 1076], identifying it as one of a long line of cases protecting the right of groups to act collectively to seek legal redress. (See *N. A. A. C. P.* v. *Button* (1963) 371 U.S. 415, 428-432 [9 L.Ed.2d 405, 415-417, 83 S.Ct. 328]; *Railroad Trainmen* v. *Virginia Bar* (1963) 377 U.S. 1, 5-6 [12 L.Ed.2d 89, 92-93, 84 S.Ct. 1113, 11 A.L.R.3d 1196]; *Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 221-222 [19 L.Ed.2d 426, 429-430, 88 S.Ct. 353]; see also *Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 136-137 [161 Cal.Rptr. 532].)

In the *United Transportation* case a labor union had set limits on the fees which recommended attorneys could charge union members pressing claims against their employers. The court said this practice must be allowed because "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." (*Id.*, at p. 585 [28 L.Ed.2d at p. 346].) It also said, "However, that right would be a hollow promise if courts could deny associations of workers *or others* the means of enabling their members to meet the costs of legal representation." (*Id.*, at pp. 585-586 [28 L.Ed.2d at p. 347], italics added.)

Appellant points to the language of Code of Civil Procedure section 117.4: "No attorney at law or other person than the plaintiff and the defendant shall take any part in the filing or the prosecution or defense of such litigation in small claims court . . . ." San Francisco maintains that certain activities in which real parties have engaged are a violation of this section and change the nature of the claims so that they are not "individual" and thus cannot be heard in small claims court.

Under existing law real parties could not be certified as a class essentially *because* of the individuality of their claims. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447.) The fact that they have exercised their constitutional right to meet together "to assist and advise each other" (*Railroad Trainmen* v. *Virginia Bar, supra,* 377 U.S. 1, 6 [12 L.Ed.2d 89, 93]) in organizing and filing their claims does not change the fundamental reality that each petitioner had a valid individual claim. Appellant does not challenge the testimony given by one of the admitted "organizers" to the effect that each claimant individually signed a claim, paid a filing fee, and alleged damages for personal injury arising from airport noise.

We cannot read the small claims statutes as denying these plaintiffs access to the court on the basis of who handed the papers to the filing clerk. The United States Supreme Court has said, "We start with the premise that the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. . . . The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." (*Mine Workers* v. *Illinois Bar Assn., supra,* 389 U.S. 217, 222 [19 L.Ed.2d 426, 430].)

San Francisco's reading of Code of Civil Procedure section 117.4 requires an interpretation which would conflict with the fundamental right of citizens to act

collectively when seeking access to the courts. Following the principle that the Legislature is presumed to write laws which are constitutional, we cannot agree with San Francisco's reading of this statute.[5]

We are further persuaded that real parties have in no way abused the small claims process since the Legislature itself has recently made mandatory the establishment of advisory services for small claims litigants. (Code Civ. Proc., § 117.18.)

The new law provides: "In each county, individual assistance shall be made available to advise small claims court litigants and potential litigants at no additional charge. Except as otherwise provided in this section, each county may determine the characteristics of the advisory service in accordance with local needs and conditions. The advisory service may be provided in person, by telephone, or by any other means reasonably calculated to provide timely and appropriate assistance. Adjacent counties may provide advisory services jointly. The service shall operate in conjunction and cooperation with the small claims division of the courts, but shall be administered in such a manner as to be independent of control of the court. Persons providing assistance may be volunteers and shall be members of the State Bar, law students, paralegals, or persons experienced in resolving minor disputes and familiar with small claims court rules and procedures. Persons providing assistance shall not appear in court as an advocate for any party. . . ."

This provision is consistent with other language in the statute, found in the very section which appellant argues that real parties have violated, i.e., "Nothing herein shall prevent an attorney from rendering advice to a party to such [small claims] litigation, either before or after the commencement of such an action, . . ." (Code Civ. Proc., § 117.4.)

Thus, it appears that all the activities of the "coordinators" of real parties to which San Francisco objects are allowed under the small claims statute and are constitutionally protected.

Since we find no violation of the statute we do not reach the issue of whether an extraordinary writ may issue to restrain its violation.

---

[5]The activities of certain "coordinators" to which appellant objects but which are constitutionally protected and are not precluded by the statute include: (1) reviewing records of the Noise Abatement Center at the airport to discover the names of potential plaintiffs; (2) preparing, circulating and filing (in the sense of carrying the papers to the courthouse after individuals had signed and attached filing fees) "master" small claims complaints; (3) hiring and consulting attorneys before and after filing claims; (4) holding "workshops" and other meetings at which participants discussed and attorneys offered advice on the presentation of testimony; (5) filing a brief written by or with the assistance of a nonattorney legal adviser, and (6) hiring expert witnesses to testify on behalf of all plaintiffs.

## Conclusion

Real parties have engaged in concerted action to assist each other in preparing and filing claims alleging damages of $750 each arising from noise connected with the operation of the airport. We hold that the respondent small claims court has jurisdiction to hear these cases. The judgment of the superior court denying San Francisco's petition for a writ of prohibition and/or mandate and sustaining real party's demurrer is affirmed.

Scott, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 27, 1983, and the opinion was modified to read as printed above.