Filed 3/27/13  McLay v. Wells Fargo Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRANDI A. MCLAY et al., | D060659 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2009-00094494-CU-BT-CTL) |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Wells Fargo Bank, NA's (Wells Fargo's) consumer account agreements, under the heading "Deposits at ATMs", contain the statement:  "If the Cardholder makes a deposit at the ATM and the amount keyed differs from the sum of the *Deposited Items,* a debit or credit adjustment will be made to the account."  (Wells Fargo 2008 Consumer Account Agreement, at p. 51.)

However, Wells Fargo acknowledges this policy does not apply to ATM transactions that are less than $10 if a customer keys in an amount less than the amount

actually deposited. In such instances, Wells Fargo will credit the customer's account in the amount keyed in, instead of the actual amount deposited, and retain the excess. However, if the customer notifies Wells Fargo of the discrepancy, an adjustment will be made to the customer's account to correct the error. (Declaration of Valiant Wong, Wells Fargo District Manager of ATM Processing, Region West, in support of Wells Fargo's motion for summary judgment.)

Plaintiff Brandi A. McLay suspected that Wells Fargo had this policy and opened an account at Wells Fargo and made several deposits. Each time, she intentionally keyed in an amount that was less than the amount of her deposit. Thereafter, she did not contact Wells Fargo to ask that her account balance be corrected. Rather, she instituted this proposed class action, asserting claims for conversion, unjust enrichment and unfair competition.

The court granted Wells Fargo's demurrer to the cause of action for conversion on the grounds that a bank cannot convert funds deposited with it, and because the complaint did not state a specific, identifiable sum alleged to have been converted.

Thereafter McLay added four additional plaintiffs who had also under-keyed their deposits. However, plaintiffs Lori L. Arnold and Lisa M. Jackson had opened accounts outside of California and their account agreements required them to prosecute their actions in those states. Plaintiffs Nechama Kravitz and Zoey Walton's account agreements required them to pursue any claims through arbitration.

The court enforced both the forum selection clause and the agreement to arbitrate. Wells Fargo then brought a motion for summary judgment on McLay's individual claims.

The court granted the motion based upon the undisputed fact that McLay intentionally under-keyed her deposits.

On appeal plaintiffs assert the court erred by (1) sustaining Wells Fargo's demurrer to the cause of action for conversion, (2) enforcing the forum selection clause against Arnold and Jackson, (3) compelling arbitration of the claims of Kravitz and Walton, and (4) granting summary judgment against McLay. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Deposits*

McLay did not have a Wells Fargo account, but she suspected that Wells Fargo had a policy regarding under-keyed ATM deposits. She went to a Wells Fargo branch location and opened a checking and savings account with a $100 deposit. McLay was provided a copy of, but did not read, the consumer account agreement that governed her accounts. Her stepbrother, Jimmie Davis Parker, would later serve as proposed class counsel in this action.

McLay first deposited cash at a Wells Fargo ATM in Santee, California. She knew she was depositing $20 in cash, but intentionally typed $19 on the ATM keypad. She checked the ATM receipt, which reflected a deposit in the amount of $19. McLay did not go into the bank to inform Wells Fargo of the discrepancy. She later received and read an account statement reflecting a deposit of $19. She did not contact Wells Fargo to notify it of the error. Had she done so, Wells Fargo would have corrected the discrepancy.

3

Later, she went to the same ATM and deposited a check made out to her for $43.92. Like the earlier cash deposit, she intentionally keyed in one dollar less. McLay again did not contact Wells Fargo to inform them that her balance needed adjustment, even after reviewing a receipt and later an account statement, both of which reflected the lesser amount that she input.

Thereafter, she made a third intentional under-keyed deposit outside of California. There she input $56 for a check she knew was made out for $65. She received and reviewed an ATM receipt and reviewed the transaction online, both of which reflected a deposit of $56. Again McLay did not contact Wells Fargo to inform them of the error.

B. *The Instant Action*

McLay filed a proposed class action on behalf of a class of Wells Fargo customers who under-keyed deposits at Wells Fargo ATMs located in California. The original complaint alleged that McLay had made one or more such deposits, but did not allege the amounts. The original complaint asserted claims for conversion, unjust enrichment, and unfair competition.

The court sustained Wells Fargo's demurrer to the conversion cause of action, which was brought on the grounds that a bank cannot convert funds deposited with it and that the complaint failed to state a specific, identifiable sum alleged to have been converted.

McLay then filed a first amended complaint on behalf of an alleged nationwide class. Wells Fargo successfully demurred to the nationwide class allegations on the basis

4

that a nationwide class would require the court to ignore the consumer account agreement's forum selection clause. Plaintiffs do not challenge that ruling on appeal.

McLay filed an amendment to the first amended complaint that reinstated the proposed California class definition from the original complaint. McLay was the only named plaintiff in that complaint.

When she filed the first amended complaint, McLay also filed a motion requesting precertification class discovery.

Wells Fargo opposed the class discovery motion, asserting that, under the required balancing test, the risk of abuse of the class action procedure outweighed McLay's minimal interests in keeping her action alive. The court granted McLay's motion.

Notice then went out to approximately 2,500 Wells Fargo customers on an opt-out basis (the class discovery notice).

Wells Fargo moved to strike the class allegations of the first amended complaint on the grounds that McLay's intentional acts of understating her deposits were not typical of proposed class members' claims and that having her stepbrother serve as class counsel created a conflict of interest. The trial court denied this motion as premature because of the class discovery notice.

The parties stipulated to the filing of a second amended complaint. The stipulation provided that Wells Fargo could respond to that complaint "by answer, demurrer, motion to strike, *motion to compel arbitration, or otherwise* . . . ." (Italics added.)

The second amended complaint added Arnold and Jackson as proposed class representatives in addition to McLay. The class discovery had identified Arnold and

5

Jackson as customers who met the proposed class definition; i.e., records indicated that they had made under-keyed deposits at Wells Fargo ATM's located in California. However, Arnold and Jackson had opened their accounts outside of California, and their account agreements with Wells Fargo required they pursue their claims in those states.

Wells Fargo responded to the second amended complaint with two motions: a motion to enforce the forum selection clause and, alternatively, a motion to compel arbitration against Arnold and Jackson. The court enforced the forum selection clause and stayed the action as to Arnold and Jackson, finding "the clauses are valid and enforceable; that [Wells Fargo] did not waive the right to assert the clauses and is not estopped from asserting the clauses; and that Plaintiff[s have] failed to demonstrate that enforcement of the forum selection clause would be unfair or unreasonable."

A dispute thereafter arose as to whether Arnold and Jackson should have been included in the list of customers (the mailing list) that Wells Fargo produced in response to the court's order on the class discovery motion. Specifically, the parties disagreed on the interpretation of the term "California customers" as used in the court's order. The parties stipulated that Wells Fargo would provide a replacement mailing list. In that stipulation, plaintiffs waived "any and all claims" they may have had against Wells Fargo arising out of the original mailing list.

The parties also stipulated to the filing of a third amended complaint, which added Kravitz and Walton as plaintiffs. The stipulation to file the third amended complaint provided that Wells Fargo could respond to that complaint "by answer, demurrer, motion to strike, *motion to compel arbitration*, or otherwise . . . ." (Italics added.)

6

Wells Fargo responded to the third amended complaint with a motion to compel the newly added plaintiffs, Kravitz and Walton, to arbitration. The court's tentative ruling denied the motion on the grounds that *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*) applied and made the arbitration agreement class action waiver unenforceable. At oral argument, however, both parties and the trial court agreed to stay the ruling and case and await the United States Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740] (*AT&T*). The trial court also stated that it had considered and rejected plaintiffs' argument that Wells Fargo had waived its right to enforce the arbitration agreement.

The United States Supreme Court then issued the *AT&T* decision, which held that the Federal Arbitration Act, title 9 United States Code section *1* et seq. (FAA), preempted the *Discover Bank* rule. The court then requested the parties submit supplemental briefing on the impact of the *AT&T* decision on the arbitration agreement.

Plaintiffs' brief limited their arguments regarding unenforceability to the arbitration agreement's class action waiver and confidentiality provisions. The trial court rejected each of plaintiffs' arguments, granted Wells Fargo's motion to compel arbitration and stayed the action as to Kravitz and Walton . Kravitz and Walton filed a notice of appeal from that order.

Wells Fargo also filed a motion for summary judgment challenging McLay's individual claims. The court granted the motion based on the undisputed fact that McLay had intentionally under-keyed her deposits.

7

At plaintiffs' request, the trial court then dismissed Arnold and Jackson's claims. McLay, Jackson and Arnold then filed a notice of appeal of the judgment against McLay and dismissal of Arnold and Jackson. We consolidated this notice of appeal with the notice of appeal previously filed by Kravitz and Walton.

DISCUSSION

A. *Conversion Claim*

"'To establish a conversion, plaintiff must establish an actual interference with [her] *ownership* or *right of possession. . . .*'" (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 136 (*Moore*).)

Here, when McLay inserted cash or checks into a Wells Fargo ATM, title passed immediately to Wells Fargo: "[T]he relationship between [the bank] and plaintiff was the ordinary relationship of a bank to its depositor. Said relationship was that of debtor and creditor and the title to the money deposited by plaintiff in [the bank] passed immediately to said bank." (*Metro Life Ins. Co. v. San Francisco Bank, Inc.* (1943) 58 Cal.App.2d 528, 534.) Thus, McLay could not state a claim for conversion. (*Moore, supra,* 51 Cal. 3d at p. 136 ["'Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, [s]he cannot maintain an action for conversion.'" (Fn. omitted.)].)

Plaintiffs attempted to distinguish funds "inserted into Wells Fargo's ATMs" from "bank deposits." However, they are the same. A deposit is made when a bank receives money intended for deposit: "When a bank receives money for deposit to a customer's account the relationship of debtor and creditor immediately arises, and the relationship is

8

not delayed until the time that the actual entry of the sum is made upon the ledger." (*Duggan v. Hopkins* (1956) 147 Cal.App.2d 67, 71.)

Any claim that McLay was not credited the full amount of her deposit thus must be addressed within the debtor-creditor relationship. A contractual right of payment alone, however, cannot support a conversion claim. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452 ["[A] mere contractual right of payment, without more, will not suffice" to support a cause of action for conversion.].)

B. *Forum Selection Clause*

Plaintiffs Arnold and Jackson contend that Wells Fargo waived or was estopped from enforcing the forum selection clause because it allegedly gerrymandered the mailing list by providing misleading discovery responses. Arnold and Jackson base their estoppel argument on the claim that they should not have been included on the mailing list. However, in exchange for a replacement mailing list, they "agree[d] to waive any and all claims they may have against Wells Fargo arising out of the Mailing List."

Arnold and Jackson entered into this stipulation after the court enforced the forum selection clause. Thus, it is *they* who have waived any such claim of error.

C. *Agreement To Arbitrate*

Kravitz and Walton assert the court erred in enforcing the arbitration agreement because (1) the instant dispute is excluded from the arbitration agreement, (2) Wells Fargo waived their right to compel arbitration, (3) the arbitration provision is unconscionable and against public policy, and (4) the *Discover Bank* rule applies to the unfair competition claim. These contentions are unavailing.

9

1. *The claims are not excluded from agreement to arbitrate*

Arnold and Jackson assert that because the arbitration agreement states that a consumer is not required to initiate arbitration of claims within the jurisdiction of the small claims court their claims are outside the agreement to arbitrate. In this regard the agreement provides: "If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there."

However, Kravitz and Walton could not have brought these claims in small claims court. They brought their claims as proposed class representatives and were represented by counsel. Class actions cannot be pursued in small claims court because counsel cannot appear at hearings there. (Code Civ. Proc., § 116.530.) Further, there is no right to discovery in small claims court. (Code Civ. Proc., § 116.310, subd. (b); see also *City and County of San Francisco v. Small Claims Court* (1983) 141 Cal.App.3d 470, 476 ["Both sides must put their cases before the court without an attorney advocate, accept relaxed rules of evidence, and do without the usual discovery process."].)

All of the plaintiffs with the exception of McLay were discovered through court-ordered discovery.

2. *Waiver*

Code of Civil Procedure section 1281.2, subdivision (a), provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it *determines that:*

10

[¶] (*a*) *The right to compel arbitration has been waived by the petitioner*." (Italics added.)

Factors to determine if waiver applies include: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and ( 6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)

A finding of waiver is disfavored and any doubts regarding a waiver allegation are resolved in favor of arbitration. (*St. Agnes, supra,* 31 Cal.4th at p. 1195.)

Here, Wells Fargo moved to compel arbitration of Kravitz and Walton's claims at the earliest time possible. They became parties to the action with the filing of the third amended complaint. Wells Fargo filed its petition to compel arbitration in lieu of filing an answer to the third amended complaint. Further, the parties' stipulation expressly stated that Wells Fargo had the right to respond to that complaint with a petition to compel arbitration.

11

In support of their claim that Wells Fargo waived the right to compel arbitration, plaintiffs rely on *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946 (*McConnell*). However, *McConnell* is inapposite.

The *McConnell* court criticized the practice of permitting a party to litigate "various issues through demurrers, motions for summary judgment, motions for certification of the class, or opposition thereto, etc., yet just before trial demand arbitration." (*McConnell, supra,* 105 Cal.App.3d at p. 951.) It analogized such conduct to "testing the water before taking the swim. If it's not to your liking you go elsewhere." (*Ibid.*) Here, by contrast, the litigation preceding the third amended complaint only involved a demurrer to the cause of action for conversion and issues regarding McLay's standing, adequacy as a class representative and her tactics in seeking replacement representatives. It did not involve litigation as against Kravitz and Walton. As noted, *ante*, Wells Fargo sought to compel arbitration as to these plaintiffs at the earliest possible time. Wells Fargo's litigation activities were not the extensive activities that the Court of Appeal in *McConnell* found to be inconsistent with a desire to arbitrate.

Further, the defendants in *McConnell* sought to compel the entire class to arbitration. (*McConnell, supra,* 105 Cal.App.3d at p. 950.) Here, Wells Fargo sought to compel arbitration only as to two newly named plaintiffs.

Kravitz and Walton assert that the litigation preceding their appearance in this action prejudiced their case. However, the only substantive rulings were the demurrer to the conversion claim and the proposed nationwide class. As to the conversion claim, as we have discussed, *ante*, the court correctly ruled that it was barred as a matter of law.

Every other proceeding was directed at either the adequacy of McLay as a class representative, discovery directed at finding new class plaintiffs and enforcement of the forum selection clause as to Arnold and Jackson. These litigation activities did not impact Kravitz and Walton.

    3. *Unconscionability*

Under California law, a contract or provision within a contract can be rendered unenforceable if it is unconscionable. (Civ. Code, § 1670.5.) Unconscionability is a question of both law and fact. (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851.) However, "[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' " (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144.) Thus, where evidence extrinsic to the contract is undisputed, the issue is purely one of law, and the court applies a de novo review to the decision of the trial court. (*Ibid.*)

Unconscionability has both a procedural and a substantive element. (*Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1803-1804.) Although both elements must be present for a contract to be deemed unconscionable, a sliding scale approach is used so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

a. *Substantive unconscionability*

Plaintiffs assert the arbitration agreement is substantively unconscionable because they must pay the arbitrator's fee of $125 and must bear their own attorney fees and costs.

It is true that an arbitration provision requiring consumers to pay fees they cannot afford is substantively unconscionable. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.) "It is self-evident that [an arbitration provision requiring consumers to pay costs they cannot afford] is unduly harsh and one-sided, defeats the expectations of the nondrafting party, and shocks the conscience. While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not. [Citation.] To state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high. Whatever preference for arbitration might exist, it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself." (*Id.* at pp. 89-90, fn. omitted.)

In *Gutierrez*, substantial evidence supported the court's finding the plaintiff could not afford the costs of arbitration. That evidence included the plaintiff's income, expenses and savings, as well as the administrative expenses imposed by the American

14

Arbitration Association (AAA).[1]  (*Gutierrez v. Autowest, Inc., supra,* 114 Cal.App.4th at pp. 90-91.)

Here, however, plaintiffs have submitted no evidence of an inability to pay. Moreover, the fact they must bear their own fees and costs is simply an expression of what is known as the "American Rule" that, absent an agreement otherwise, each side bears its own fees and costs in litigation.

Plaintiffs Kravitz and Walton also assert that a confidentiality provision in the agreement to arbitrate makes the arbitration agreement unconscionable.  However, they have submitted no authority to support the proposition that such a clause is unenforceable or that it would support denial of Wells Fargo's peition to compel arbitration.

b.  *Procedural unconscionability*

Kravitz and Walton assert the consumer account agreement is an unenforceable contract of adhesion.

" ' "Procedural unconscionability" concerns the manner in which the contract was negotiated and the circumstances of the parties at that time' " and focuses on oppression or surprise.  (*Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1088-1089.)  " ' "Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice."  [Citations.]  "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.' "

---

[1]     Plaintiffs have requested that we take judicial notice of the AAA rules, as well as a 2012 amendment to the consumer account agreement.  We grant plaintiffs' request.

(*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532.) The procedural element usually takes the form of a contract of adhesion, which is a " 'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra,* 24 Cal.4th at p. 113.)

However, "the times in which consumer contracts were anything other than adhesive are long past." (*AT&T, supra,* 131 S.Ct. at p. 1750, fn. omitted.) Further, that a contract is one of adhesion is only one factor to consider when determining if it is procedurally unconscionable. (*Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 344.)

Kravitz and Walton also assert the consumer account agreement is unconscionable because it does not require signatures or initials. However, when they opened their accounts with Wells Fargo, they each signed a document entitled "Consumer Account Application." In those documents, the following statement appeared above the signature line:

> "I have received a copy of your applicable account agreement and Use of Information brochure and agree to be bound by them.. I also agree to the terms of the dispute resolution program described in the account agreement. Under this program our disputes will decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge."

Moreover, within the consumer account agreement, the agreement to arbitrate immediately follows the introduction and definitions sections and is clearly designated by

16

the heading "Dispute Resolution Program: Arbitration Agreement." Thus, they cannot claim "surprise" with regard to the arbitration agreement.

Plaintiffss also contend the arbitration agreement should have included a copy of the AAA arbitration rules. However, the arbitration agreement tells them these rules apply to the arbitration and that they may access them on AAA's website. Indeed, plaintiffs have attached thoses rule to their request for judicial notice. Again, they cannot complain of any surprise with regard to the AAA arbitrations rules.[2]

D. *Summary Judgment on McLay's Claims*

1. *Standard of review*

"Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law." (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 112; Code Civ. Proc., § 437c, subd. (c).) In reviewing a summary judgment, we must "'strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact.' [Citation.] We conduct a de novo review . . . ." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 112.)

---

[2]    In one section of their opening brief appellants assert that *Discover Bank* "[c]ontrols as to the UCL [c]laim." However, *AT&T* involved a claim under the UCL and overruled the *Discover Bank* rule.

17

2. *Analysis*

a. *Harm to McLay*

We conclude the court properly found that "(1) [McLay] caused her own harm; and/or (2) the doctrine of avoidable losses precludes her claim."

The elements of a claim for breach of contract include damage to the plaintiff *resulting* from the breach. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178; see also Civ. Code, § 3300 [damages for breach of contract is the amount of detriment proximately caused by the breach].)

Here, McLay's claimed damages did not result from any breach by Wells Fargo, but by McClay's own intentional acts. McLay knew the amounts she was depositing in the ATMs, but intentionally keyed in a lesser amount. She confirmed upon reviewing her ATM receipts and her account statements that her account had been credited in the amount she keyed in. Therefore, her damages resulted from her own action and her breach of contract claim thus fails.

The damages element of McLay's breach of contract claim also fails because she cannot recover damages that could have been avoided by reasonable effort and without undue expense. (*Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 41.)

McLay's harm was foreseeable because it resulted from her intentionally under-keying the amounts she deposited. She could have avoided her losses by reasonable effort and without undue expense. She could have contacted Wells Fargo to notify them of the discrepancies and an adjustment would have been made to her account balance.

18

b. *Standing under the Unfair Competition Law*

To have standing to pursue a claim under the unfair competition law, a plaintiff must have suffered injury that was caused by the alleged unfair business practice. (Bus. & Prof. Code, § 17204; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*).)

However, costs incurred for the purpose of generating litigation do not constitute injury under the unfair competition law. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813, abrogated on other grounds in *Kwikset, supra,* 51 Cal.4th at p. 337.) In *Buckland*, the plaintiff purchased the defendant's products solely to facilitate her litigation and the Court of Appeal held that did not constitute "injury in fact" under the unfair competition law. (*Buckland,* at p. 816.)

Likewise in this case, there was no injury because McLay intentionally underkeyed her deposits to generate litigation.

c. *Unjust enrichment claim*

In order to state a claim for unjust enrichment, "[i]t must ordinarily appear that the benefits were conferred by *mistake, fraud, coercion or request*; otherwise, though there is enrichment, it is not unjust." (*Nibbi Bros. v. Home Fed. Sav.& Loan Ass'n* (1998) 205 Cal.App.3d 1415, 1422.)

Here, the acts that conferred the benefits were intentional and not the result of mistake, fraud, coercion or request. She intentionally underkeyed her deposits.

McClay contends that the court erred in granting summary judgment on this claim because she "believed" that Wells Fargo would automatically correct her error and she

was "mistaken" in that respect.  However, it is the *act* which confers the benefit that must

be mistaken, and therefore her claim for unjust enrichment fails.[3]

## DISPOSITION

The judgment is affirmed.  Wells Fargo shall recover its costs on appeal.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.

---

[3]     McLay also asserts that this claim could be considered an incorrectly named claim for money had and received.  However, she did not plead that cause of action, which is materially different than a claim of unjust enrichment.

20