## KIMBALL *v.* NORTON & a.

A stipulation between a savings-bank and a depositor, that his deposit may be paid to any one presenting his book, does not relieve the bank from the duty of exercising reasonable care.

BILL IN EQUITY, by the assignee of the Rockingham Ten Cents Savings-Bank, appointed by the court to wind up the bank. Tried by the court. The defendant, Mary S. Norton, is the widow of B. Norton, who died May 28, 1876. The other defendant, Emma, is their daughter. In 1869, Mrs. Norton, having $600 of her own money, which came from the estate of her deceased brother, delivered it to her husband, requesting him to deposit it in said bank, half in her name and half in the name of Emma. He made the deposit as requested, brought home the deposit-books and gave them to his wife, who locked them in her trunk and put the key in another trunk not locked. When he made the deposit he signed the following upon a book of the bank:

"CERTIFICATE OF DEPOSIT.

"July 22, 1869. Deposited this day in the Rockingham Ten Cents Savings-Bank $300, which deposit has been entered in a book issued by said bank, and may be withdrawn by the person who may present the said book, entering the same thereon and

receipting therefor to the bank: or according to the charter and by-laws as set forth in the book of deposit this day delivered me, which are to make a part of this contract.

"MARY S. NORTON BY B. NORTON."

At the same time he signed another similar agreement, "Emma Norton by B. Norton." The ninth article of the by-laws of the bank, printed in every deposit-book, contains the following:

"As it will be impossible for the officers of the corporation to identify every depositor, the production of the book of deposit will be held to show that the person producing the same is legally authorized to receive the deposit; and the corporation will not be responsible for loss sustained when the book of deposit is so produced and the money paid entered thereon, unless the depositor has given notice to the treasurer that said book has been lost or stolen; and such payment, so entered on any such book so produced, shall discharge the corporation from all further claim from any one for the amount so paid."

Without the knowledge of either of the defendants, Mr. Norton took the deposit-books from the trunk, and pledged them to the same bank as security for his notes given for money hired by him of the bank. The defendants have not assented to the pledge; and Emma had no knowledge of it, or of the deposit, during the life of her father. The defendants having demanded the deposit-books, the plaintiff brought this bill for instructions. The court found for the defendants, and ruled that they were entitled to a decree for the books, discharged from all claim of the bank as pledgee; and the plaintiff excepted.

*Page*, for the plaintiff.

I. The provisions of the charter and by-laws contained in the deposit-book must be taken as part of the contract between the bank and the depositor. *Heath* v. *P. Savings-Bank*, 46 N. H. 78. It is provided in Article 8 of the by-laws that the deposit may be withdrawn "by the depositor, or by some person legally authorized by the depositor;" and Article 9 provides that "the production of the book of deposit will be held to show that the person producing the same is legally authorized to receive the deposit." It was therefore part of the contract that the person producing the book was to be deemed duly authorized to receive the deposit. This was also agreed to by the written contract or certificate of deposit signed by the depositor, as set forth in the case; and this contract further provided that the deposit "may be withdrawn by the person who may present the said book, entering the same thereon, and receipting therefor to the bank." The book of deposit became then, in fact, a certificate of a deposit of money

payable to the bearer, and in reality negotiable. *Miller* v. *Austen*, 13 How. 218; *Kilgore* v. *Bulkley*, 14 Conn. 363; *Fisher* v. *M. C. & B. Co.*, 3 Am. Law. Reg. 423. But whether regarded as negotiable or as *quasi* negotiable, or viewed solely with regard to the contract between the bank and the depositor, it is apparent that by the very terms of the deposit it was payable to the bearer; and it is a notorious fact that such books of deposit are daily sold, and pass from hand to hand by mere delivery. There can be no question that Mr. Norton could have presented the book and withdrawn the deposit. There is no distinction between a pledge of the book as collateral, and a collection of the deposit or sale of the book. *Hotchkiss* v. *Banks*, 21 Wall. 354; *Blanchard* v. *Stevens*, 3 Cush. 162; *N. Y. M. Iron Works* v. *Smith*, 4 Duer 362; *Swift* v. *Tyson*, 16 Pet. 1.

It may be said that a part of the contract signed by the depositor provided that withdrawals were to be entered on the book and receipted for to the bank. This contract was one wholly for the protection of the bank, and the bank could observe it or not as it pleased. The by-laws provided that the bearer of the book should be legally entitled to receive the deposit, and the bank could insist that he sign a receipt for its protection. But the pledging of the book gave the officers of the bank the right, in case the indebtedness for which it was security was not paid, to withdraw the deposit and apply it to the indebtedness, and to enter the withdrawal upon the book and receipt for it to the bank as attorney for the depositor. If this was not so, the bank could not in this case apply the deposit to the payment of the debt for which it is security, even though the book had belonged to the pledgeor.

II. The bank had no notice or knowledge of any defect in Mr. Norton's title to these books payable to bearer. A suspicion that there is a defect of title, or knowledge of circumstances that might excite suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can only be produced by bad faith, which implies guilty knowledge or wilful ignorance, and the burden of proof lies on the assailant of the title. *Hotchkiss* v. *Banks*, 21 Wall. 354; *Goodman* v. *Harvey*, 4 Ad. & Ell. 870. But in this case the bank officers knew that the husband deposited this money. They could have had no knowledge that the money was not his own, deposited as it is very frequently done in fictitious names, or the names of wife or children. They delivered the books to him, and in less than two months he returned with one of them and pledged it in order to obtain a loan. The notorious fact was well known to them that books of deposit pass from hand to hand, and the name of the party to whom they are issued is never thought of, and, in the language of the by-laws, the person producing the book "is legally authorized to receive the deposit."

III. The question whether the books were stolen or embezzled

from the wife is not important, because, being payable to bearer, and taken by the bank for a valuable consideration in good faith, without knowledge of any defect of title, the bank can hold them against all the world. *Hotchkiss* v. *Banks,* 21 Wall. 354; *Tucker* v. *Bank,* 58 N. H. 83; *Paige* v. *Chapman,* 58 N. H. 333; *Emerson* v. *Crocker,* 5 N. H. 162; *Wheeler v. Guild,* 20 Pick. 545.

*Albert R. Hatch* and *John Hatch,* for the defendants.

The deposit was made by Mrs. Norton, by the agency of her husband; and the usual certificates of deposit were taken in the names of herself and of her daughter Emma. The deposit in the name of the latter was intended as a gift to her, and she has since accepted the donation, and ratified the deposit of the money in her name. It has been hers, therefore, from the time it was appropriated to her use. *Howard* v. *Bank,* 40 Vt. 597; *Blasdel* v. *Locke,* 52 N. H. 238; *Grangiac* v. *Arden,* 10 Johns. 293.

I. The by-laws of the bank, which were made part of the condition of the deposit, authorized the officers of the corporation to pay the deposit to the person producing the book, upon the express ground that " it will be impossible for them to identify every depositor;" and it is upon this ground only that such a by-law has been held to be reasonable. The reason does not exist when it is known to the officers of the bank that the person who presents the book is not the true owner. *Cessante ratione, cessat quoque lex.* Accordingly it has been uniformly held that such a by-law or such a contract as is alleged in the plaintiff's bill does not dispense with ordinary care on the part of the officers of the bank. *Appleby* v. *E. Sav. Bank,* 62 N. Y. 17; *Allen* v. *W. Sav. Bank,* 69 N. Y. 320; *Sullivan* v. *L. Inst. of Savings,* 56 Me. 509. The officers of the bank must have known that the books were not presented by the real owner, because (1) both the depositors were women (*Allen* v. *W. Sav. Bank,* 69 N. Y. 320); (2) the books were not presented for payment, but as security for a loan to the person who produced them. Either of these circumstances was sufficient to put the officers of the bank upon inquiry. The bearer in effect said to them, I am about to apply this money to my own use. Even the question, Have you the right to do so? was not asked; nor was any order or written contract of the depositor presented or required.

The plaintiff suggests that such deposits are often made in the names of persons who are not the true owners, and that they are commonly understood to belong to the bearer. But no such fact is found in the case, and if it existed it could not be cited to prejudice the true owners of this money. There is no evidence that the deposit was understood to belong to Mr. Norton; no officer of the bank has so testified. His agency to make the deposit cannot be construed into an authority to withdraw it.

II. The pledging of the deposit was not within the terms either

of the by-law or the contract. The by-law, Art. 9, says that the production of the book will be held to show that the person producing the same is legally authorized "to receive the deposit;" and that "payment entered on the book produced" shall discharge the corporation from all further claim "for the amount so paid." The contract said to have been signed at the time of the deposit is, that the money "may be withdrawn by the person who may present the book, entering the same thereon and receipting therefor to the bank." These are provisions valuable to the depositor and tending to his security, and they constitute reasonable limits to a rule otherwise too loose to be countenanced by the law. No such payment or withdrawal has, in fact, ever been made. The books were pledged by Mr. Norton; and that is the only title of the bank to them. But neither the by-law nor the contract authorizes any person but the owner to pledge the deposit, nor would there be any reasonable occasion for such a provision. This case comes not within the exception suggested in *Tucker* v. *Bank*, 58 N. H. 83, for the books were not entrusted to Mr. Norton, nor were they rightfully or lawfully in his possession. The rule is, that one who has no property in goods, &c., cannot sell them to another. 1 Chitty Con. 538; *Com. Bank* v. *Kortright*, 22 Wend. 348. Nor is it within the rule applicable to commercial paper, because securities of that kind constitute an exception to the general rule. *Murray* v. *Lardner*, 2 Wall. 110; *Miller* v. *Race*, 1 Burr. 432. This rule has never been extended further than to corporation bonds, and on the express ground that they have the same qualities as commercial negotiable instruments. *Mercer Co.* v. *Hacket*, 1 Wall. 83. Money is also an exception. *L. R. Bank* v. *Plimpton*, 17 Pick. 161; but not if taken without right as by gaming. *Mason* v. *Waite*, 17 Mass. 560. A bank deposit-book is not a negotiable instrument. *Witte* v. *Vincenot*, 43 Cal. 325; *Stewart* v. *State*, 42 Texas 242.

The distinction between the rule applicable to promissory notes and the like taken in pledge, and the same when taken in payment, is firmly established in this state, and is to be regarded as a law of property. *Jenness* v. *Bean*, 10 N. H. 266; *Williams* v. *Little*, 11 N. H. 66; *Bank* v. *Kent*, 15 N. H. 579; *Fletcher* v. *Chase*, 16 N. H. 40; *Rice* v. *Raitt*, 17 N. H. 118; *Doe* v. *Burnham*, 31 N. H. 433.

DOE, C. J. There is no controversy between the defendants. It is to be inferred that the mother intended an absolute gift of the money deposited in the daughter's name; that there has been no attempt to revoke it; and that the daughter has accepted it. This is a gift. *Blasdel* v. *Locke*, 52 N. H. 238.

The stipulation that a deposit may be withdrawn by any one presenting the book, does not relieve the bank from the duty of acting in good faith and with reasonable care. As it does not mean that the bank may pay the money fraudulently to a person producing the book, but known not to be entitled to the money, so

it does not mean that the bank is absolved from all obligation of caution. A depositor is a beneficiary of a fund held by the bank as trustee. The trustee is incorporated for the purpose of exercising care in the management and preservation of deposits. This object would not be accomplished by care in the investment of the fund, and recklessness in paying a deposit to a wrongful possessor of a book. Without a special contract of exemption, the trustee would be bound to use due care to prevent a loss of the fund by false pretences of ownership or. authority, as well as to guard against burglary and larceny. If, by stipulations with depositors, an incorporated savings-bank can. discharge itself from the legal responsibility of its public employment and the 'fiduciary duties it was created to perform, it is to be presumed that the stipulations made by this bank were not designed thus to defeat the intention with which the legislature passed the act of incorporation. The by-law and agreement are to be construed according to the authorized business and organic object of the institution. The terms of deposit cannot be understood to make the books payable to bearer, like bank bills, without imputing to the trustee a deliberate and studied attempt to expose beneficiaries to a great and unnecessary peril of loss, and to deprive them of important security which the trustee was chartered to furnish.

Depositors who thoroughly. understood the printed forms used by the bank were forcibly warned to keep their books in close and careful custody, on account of the danger of their being wrongfully presented by other persons for payment, and the bank's difficulty of identifying the depositors. In this case there was no difficulty of identification. The bank, knowing that the pledgeor was not the apparent owner of the books, did not require him to produce such evidence of his authority as ordinary fiduciary care demanded. The court found at the trial that the bank took the defendants' books in pledge, with knowledge that the apparent title was in the defendants and not in the pledgeor, without the owners' consent, without an assignment, order, or proof of delivery, and without sufficient evidence of the pledgeor's authority. This was a correct conclusion of fact, and the conclusion of law is that the pledge was inoperative. In *Donlan* v. *P. Inst. for Savings*, 127 Mass. 183, there was a fraudulent personation of the depositor, and the bank was not guilty of negligence.

*Exception overruled.*

FOSTER, J., did not sit: the others concurred.