[Civ. No. 16981.   First Dist., Div. Two.   Dec. 19, 1956.]

BERNADETTE DUGGAN, Appellant, v. THORNE HOPKINS, as Executor, etc., Respondent.

Otto A. Hoecker for Appellant.

MacInnis, Alaga & Glassman for Respondent.

KAUFMAN, J.—This is an appeal by plaintiff Bernadette Duggan from that part of a decree quieting title which awarded the sum of $5,394.96 to Thorne Hopkins, as executor of the estate of Jeanette Thorne, deceased. Said sum had been claimed by appellant as part of a joint account standing in the names of deceased and appellant.

Jeanette Thorne died on January 23, 1954, in the residence of Bernadette Duggan, appellant, with whom she had made her home since March, 1953. Shortly after Mrs. Thorne came to live with appellant, she made appellant a joint tenant on a bank account which she had in the Ocean-Faxon Branch of the Bank of America, San Francisco, and informed appellant that she wished her to have whatever money was in the account at the time of her death. She told her nephew William Hopkins, a beneficiary under her will, that the residue in said account at the time of her death was to go to appellant, as long as she could have a home with her.

In June, 1953, Jeanette Thorne opened two accounts in the Ocean-Faxon Branch of the Bank of America, one a commercial account, which was still in existence at the time of her death; the other, a savings account, Number 5259. These accounts were created by transfers of funds from

savings accounts in the Turlock Branch of the Bank of America.

On June 22, 1953, Jeanette Thorne closed savings account Number 5259 and caused the balance on deposit to be transferred to a savings account Number 5211 in the names of appellant and herself as joint tenants with right of survivorship.

At the time Mrs. Thorne also had a savings account Number 2503 in Anglo California National Bank, San Jose Branch.

On January 19, 1954, Mrs. Thorne executed a withdrawal order for the balance of savings account Number 2503 in Anglo, San Jose. The withdrawal order together with her passbook for said account were deposited at her direction with the Ocean-Faxon Branch, Bank of America, for collection and for deposit in joint savings account Number 5211. The Ocean-Faxon Branch issued collection receipt Number 1252 signed by Jeanette Thorne, which directed Bank of America to credit the amount of the Anglo account to joint savings account Number 5211.

On January 21, 1954, the Ocean-Faxon Branch sent the withdrawal order and passbook to Anglo, San Jose, with instructions to credit the Bank of America general account with the proceeds of the account.

On January 22, 1954, Anglo, San Jose, completed the withdrawal order, closed account Number 2503, and credited the balance of $5,394.96 to the Bank of America general account at the Head Office of Anglo and sent the advice of fate direct to the Ocean-Faxon Branch.

This method of transmitting money between the banks was a known recognized and reasonable custom and usage of banks, and Bank of America and Anglo California National Bank maintained reciprocal accounts with each other.

On Saturday, January 23, 1954, Jeanette Thorne died. The bank was closed on Saturday and Sunday, hence the advice of fate was not received by the Ocean-Faxon Branch until after Jeanette Thorne's death. The entry of the credit of $5,394.96 was not made in the ledger for joint savings account Number 5211 until January 27, 1954. Ocean-Faxon Branch up till this time had had no notice of Mrs. Thorne's death.

The trial court found that it was the intention of both appellant and Mrs. Thorne that the balance remaining in joint savings account Number 5211 at the death of Mrs. Thorne was to be the property of appellant but that *at the*

*time of opening the account* Mrs. Thorne did not intend
to make a gift of the funds in said account to appellant.
The court further found that Anglo, San Jose had closed
account Number 2503 on January 22, 1954, and credited
the Bank of America general account in San Francisco with
the balance; that this method of forwarding proceeds of col-
lections was a recognized and reasonable custom of banks;
that the written advice from Anglo, San Jose, was not
received by the Ocean-Faxon Branch of the Bank of America
until after the death of Jeanette Thorne. The trial court
concluded therefrom that the sum credited to account Number
5211, before the death of Jeanette Thorne, namely $8,085.99,
belonged to appellant, but that the sum of $5,394.96, which
was entered in said account on January 27, 1954, was the
property of the estate of Jeanette Thorne.

Appellant contends that the sum of $5,394.96 was collected
before the death of Jeanette Thorne, therefore the collecting
bank, Ocean-Faxon Branch, was from that time indebted
to the holders of the joint account, and the fact that the
advice of fate had not been received prior to the death of
Mrs. Thorne is of no consequence. It is appellant's position
that the collecting bank became a debtor to Jeanette Thorne's
joint savings Number 5211 at the moment when the item
was paid by Anglo, San Jose to the Bank of America, when
the reciprocal account of said bank was credited with the
amount of account Number 2503 according to the instructions
from the Ocean-Faxon Branch. ██ It is well settled that
from the moment of collection of an item by a bank, the
relationship of debtor and creditor arises, if no instructions
have been given which show an intent on the part of the cus-
tomer to keep the proceeds of the collection separate from the
general funds of the bank. In *Powell* v. *Bank of America,*
53 Cal.App.2d 458, 464 [128 P.2d 123], this distinction is
noted and the court there quotes from a discussion of the
subject in 8 Zollman on Banks and Banking, pages 401-409,
where it is pointed out that banks usually adopt one of
two methods of collecting against another bank, reciprocal
accounts or remittance, and that under the first system, the
relationship of debtor and creditor arises as soon as the
collection is made. It is said in Mitchie on Banks and Bank-
ing, volume 6, section 9, page 18, that it is sufficient if the
collection is made according to custom by a settlement between
the two banks on balancing accounts, that "this is a money
settlement and the receipt of the money is *payment* in the
actual business sense that the law requires, under the reason-

able custom adopted by banks as a necessity and recognized as such throughout the world." (And see 8 Cal.Jur.2d 128.) (Emphasis ours.)

When a bank receives money for deposit to a customer's account the relationship of debtor and creditor immediately arises, and the relationship is not delayed until the time that the actual entry of the sum is made upon the ledger. (See *Midway Five Oil Co.* v. *Citizens Nat. Bank,* 25 Cal.App. 366, 368 [143 P. 800]; *Luckehe* v. *First Nat. Bank,* 193 Cal. 184, 187 [223 P. 547].)

There can be no question but that the relationship of debtor and creditor between Jeanette Thorne and Anglo, San Jose, had ceased on January 22, 1954, the day before her death, when Anglo had paid the balance of the account to Bank of America in accordance with the instructions of the Ocean-Faxon Branch by crediting the Bank of America account, and had mailed an advice of the completed transaction. On the collection request in the space headed "How Paid to Depositor," Anglo had entered, "Due from Cr."

Respondent argues that the relationship of principal and agent existed between Jeanette Thorne and the Ocean-Faxon Branch, and that since she died before January 27, 1954, the day on which the item was credited on the joint account, the item was not collected until then. Therefore the agency being revoked by death, the bank could not carry out her instructions to credit the joint account upon the collection of the item from Anglo, San Jose. It is of course a well-recognized principle that the agent's authority is terminated by death of the principal. (*Kunz* v. *Anglo & London Paris Nat. Bank,* 214 Cal. 341 [5 P.2d 417].) According to the above cited authorities, it appears, however, that the collection and payment of the item had been made on January 22, 1954, the purpose of the agency fulfilled, and that the relationship of debtor and creditor had already been established.

Respondent to avoid this result, relies upon sections 1013 to 1019 of the Financial Code. Section 1011 provides that when any credit is allowed by a bank for an item drawn on, through or payable at any other bank, it shall be provisional and subject to final payment. In the instant case we have no evidence but that the payment was final. Section 1013 provides that when credit had been given the bank may have until midnight of the next business day to *revoke* such credit, and if revoked such bank is entitled to a refund of, or credit

for, the amount of the item. Respondent claims, that in view of these sections, and section 1017 allowing a bank to charge back the item within such provisional period, there was no payment and no debtor-creditor relationship until midnight of the next business day, which would have been Monday, January 25, 1954. Since Jeanette Thorne had died on January 23, the agency relationship terminated, the money was not owed to the joint account, but became the property of decedent's estate.

The sections relied upon by respondent do not appear to be in any way applicable to the present situation. The very wording of the sections show that they contemplate the coming into existence of a debtor-creditor relationship upon the crediting of an item, but that this relationship may be revoked, the credit reversed, or the money refunded during the protest period. The credit may be provisional under the section, but nevertheless, for the time being the relationship is that of debtor and creditor subject only to revocation if a reason for protest arises.

We conclude that since Bank of America had been paid the proceeds of the account in Anglo, San Jose, before the death of Jeanette Thorne, the debt was owed from that moment to the joint account in accordance with her instructions, the nature of the debt was then fixed and her death later would not change its character. This being true, the amount collected would be owed to the owners of the joint savings account, and the collected sum of $5,394.96 should be paid to appellant, as survivor of that account.

Appellant also contends that the opening of the joint account and the contract for collection of the Anglo, San Jose, account with instructions to deposit the proceeds to the joint account constitutes a gift to appellant. The trial court had made a finding which is supported by substantial evidence that at the time of *opening* the joint account, it was Jeanette Thorne's intention that the funds therein should be used for the benefit of Jeanette Thorne during her lifetime and in accordance with her instructions, and that she intended that the balance remaining in the account at her death should be the property of appellant. No finding has been made in regard to decedent's intent regarding the funds which were transferred from the San Jose account, but since she had ordered their transfer into joint savings account Number 5211, her intention has been clearly indicated that the conditions applying to account Number 5211 were to attach to this fund. She

had done everything that she could do to effect that purpose. In the case of *White* v. *Bank of America,* 53 Cal.App.2d 831 [128 P.2d 600], it was held that there had been a complete gift of a savings account to persons with whom deceased had a joint account, when she had delivered the passbook of another savings account to a bank teller together with a signed withdrawal slip, during the week end, but her death intervened before the passbook and withdrawal order had been taken to the bank by the teller. In the instant case, the signed withdrawal slip and passbook had been delivered to the bank with instructions to collect the sum and credit the joint account before the death of decedent.

█ It has been held that delivery of a bank book with donative intent constitutes a gift of a savings account whether or not accompanied by a written order. Here, also we have the written order signed by decedent. (See *Wilson* v. *Crocker First Nat. Bank,* 12 Cal.App.2d 627, 630 [55 P.2d 1208]; *Cahill* v. *Goecke,* 10 Cal.App.2d 279 [51 P.2d 905].) █ Delivery of the passbook may be made to a third person for the benefit of the donee. (*Estate of Escolle,* 134 Cal.App. 473, 480 [25 P.2d 860].)

It is clear, therefore, that the account formerly on deposit in the San Jose bank partakes of the nature of joint savings account Number 5211 under either of the theories discussed above.

In view of the foregoing the decree is reversed with directions to the trial court to enter a decree in favor of appellant in accordance with the views expressed in this opinion.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.