[Civ. No. 52029. First Dist., Div. One. Apr. 25, 1983.]

KATHLEEN RUTH MORSE et al., Plaintiffs and Appellants, v.
CROCKER NATIONAL BANK, as Trustee, etc.,
Defendant and Respondent.

COUNSEL

Cotchett, Dyer & Illston, Susan Illston and Joseph W. Cotchett for Plaintiffs and Appellants.

John M. Gregory, John P. Murphy and Chickering & Gregory for Defendant and Respondent.

OPINION

**RACANELLI, P. J.**—This appeal is taken from a judgment in favor of respondent and defendant Crocker National Bank (Crocker) on a supplemental com-

plaint, as amended, for rescission and damages brought by the remaindermen of an inter vivos trust established by Kathleen Mae Eitel, deceased, as an integral part of a property settlement agreement executed between decedent and her former spouse during a 1961 divorce proceeding.[1] On appeal, the sole question to be decided is whether the action for rescission falls within the open limitation provisions of section 348 of the Code of Civil Procedure[2] (to which all statutory references are made unless otherwise shown). We will conclude that the statute is inapplicable to the action brought to recover money or other property delivered to Crocker in its capacity as designated trustee.[3]

## FACTS

The relevant material facts are undisputed. In 1961, during the pendency of the divorce action, William and Kathleen Eitel executed a property settlement agreement dividing their community property. Kathleen, who was independently represented by counsel, was then a patient at a local sanitarium due to a chronic mental illness. The agreement provided that most of Kathleen's assets were to be placed in trust.[4] The formal trust agreement, executed by Kathleen as trustor and respondent as trustee on February 6, 1961, designated Kathleen as life beneficiary with the remaining principal and undistributed income subject to her testamentary power of appointment. Under the terms of the irrevocable trust agreement, the trustee was vested with broad managerial discretion and authority to retain the entrusted stocks in the exercise of its business judgment without any duty to diversify the portfolio.

The trial court found that Kathleen was legally incapable of understanding the nature and effect of the formal trust document she signed, and that such disability persisted "at least through the year 1966."[5] The court made additional findings absolving Crocker of any culpability in the 1961 competency proceedings found tainted as a result of undue influence of others and the fraud practiced upon that court.

Appellants concede the validity of the finding of Kathleen's competency after 1966, focusing their challenge solely on the court's determination that the open limitation provisions of section 348 did not apply.

---

[1]Appellants and plaintiffs are the children, grandchildren and personal representative of decedent, who died shortly after the filing of the original complaint. Kathleen's death mooted the sixth cause of action seeking to terminate the trust.

[2]The statute provides in pertinent part that no limitation applies to "actions brought to recover money or other property deposited with any bank, banker, [or] trust company. . . ."

[3]Since the parties treat the applicability of section 348 as the single issue on appeal, we need not discuss which of the affirmatively pleaded limitation periods applied.

[4]The trust assets, with an aggregate value of over $2 million, consisted primarily of shares of stock in Eitel-McCullough, Inc., an electronics company founded by William.

[5]The court further found that the evidence of Kathleen's continuing disability beyond December 1966, "to and including March, 1974" (or four years before suit) was insufficient.

## I

Relying on a common usage of the term "deposit"[6] in conjunction with a proposed liberal construction of the statutory language (see e.g., *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 813 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642]), appellants argue that the act of placing virtually all of Kathleen's property settlement assets in trust with Crocker constituted a "deposit" of money and property falling within the open limitation provisions of section 348 rather than the four-year statute implicitly found by the trial court.[7] Crocker argues in turn that the property conveyed to it as trustee pursuant to the trust instrument is not encompassed within the definition of a deposit of money or other property with a bank creating a debtor-creditor relationship subject to the provisions of section 348; as a corollary, it is further argued that appellants' claim for recovery of the entrusted assets was grounded upon a theory of rescission by the trustor rather than a belated claim for payment of an outstanding debt represented by a bank deposit. We find Crocker's argument meritorious.

## II

At the outset, we underscore that the gravamen of the action tried, and from which the appeal is taken,[8] was for rescission based upon Kathleen's alleged incompetency. As Crocker correctly points out, that action was effectively mooted by termination of the trust upon Kathleen's death and the ultimate distribution of the remaining trust assets to the remaindermen beneficiaries. But in any case, the trial court's findings that Kathleen's competency had been restored for over 10 years before commencement of the underlying litigation is unchallenged herein. Instead, as earlier noted, appellants rest their case solely on the argument that the open-ended statute of limitations permitted suit to obtain restitution and consequential damages at any time. We cannot agree.

In construing the subject statute, we first analyze the nature of the relationship between a commercial depositor and bank depository to which, we conclude, the statute unmistakably is directed.

---

[6]The generic term is commonly employed to describe a personal object "which is placed . . . for safekeeping [or] entrusted to the care of another." (Webster's New Internat. Dict.; see Black's Law Dict. (4th ed.) stating a similar definition in transitive form; see also Civ. Code, § 1814 (voluntary deposit).)

[7]Although the four-year period under section 337 would be tolled during a period of insanity (§ 352), the trial court determined that appellants failed to prove that Kathleen's incapacity extended beyond 1966 (the year of her release from the sanitarium) thus defeating her claim for rescission and damages. (See Civ. Code, §§ 39, 1692.)

[8]The remaining actions against Crocker, bifurcated for trial by an advisory jury, sought damages on claims of mismanagement. No appeal has been taken from the judgment in favor of Crocker on these claims.

■ It is axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor. (*Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 321 [139 P.2d 1]; *Union Tool Co.* v. *Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 53 [218 P. 424, 28 A.L.R. 1417]; *Smiths' Cash Store* v. *First Nat. Bank* (1906) 149 Cal. 32, 34 [84 P. 663]; *Duggan* v. *Hopkins* (1956) 147 Cal.App.2d 67, 71 [304 P.2d 823]; *Home Escrow etc. Corp.* v. *County of L.A.* (1957) 155 Cal.App.2d 335, 338 [317 P.2d 1021]; *Wright* v. *Bank of California* (1969) 276 Cal.App.2d 485, 488 [81 Cal.Rptr. 11]; *Estate of Collins* (1978) 84 Cal.App.3d 928, 933 [149 Cal.Rptr. 65].) Such a deposit is in effect a loan to the bank. (*Smiths' Cash Store* v. *First Nat. Bank, supra,* 149 Cal. at p. 34.) Title to the deposited funds passes immediately to the bank which may use the funds for its own business purposes. (*Bank of America Assn.* v. *California Bk.* (1933) 218 Cal. 261, 273, 274 [22 P.2d 704]; *Smiths' Cash Store* v. *First Nat. Bank, supra,* 149 Cal. 32; *Metropolitan L. Ins. Co.* v. *S. F. Bank* (1943) 58 Cal.App.2d 528, 534 [136 P.2d 853].) The bank does not thereby act as trustee and cannot be charged with converting the deposit to its own use. (*Smiths' Cash Store* v. *First Nat. Bank, supra,* at pp. 34-35; *Metropolitan L. Ins. Co.* v. *S. F. Bank, supra,* at p. 534.) It is, however, obligated to pay the debt reflected by the balance of the deposited funds upon its depositor's demand. (*Union Tool Co.* v. *Farmers etc. Nat. Bank, supra,* 192 Cal. 40, 53; *Allen* v. *Bank of America* (1943) 58 Cal.App.2d 124, 127 [136 P.2d 345].)

■ But when the bank acts as trustee of an express trust, its relationship with the trustor and beneficiary is markedly different. (See generally *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 977-978 [185 Cal.Rptr. 49]; *Petherbridge* v. *Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517-518 [145 Cal.Rptr. 87].) Unlike the conventional debtor bank depository, a trustee may not use or deal with the trust property as its own. (Civ. Code, § 2229; *Petherbridge* v. *Prudential Sav. & Loan Assn., supra*; *Ojala* v. *Bohlin* (1960) 178 Cal.App.2d 292, 300 [2 Cal.Rptr. 919]; *Landis* v. *First National Bank* (1937) 20 Cal.App.2d 198, 206 [66 P.2d 730].) A trustee occupies a fiduciary position with the duty to exercise its independent judgment (Civ. Code, § 2261); it may not automatically accede to the demands of the trust beneficiary (*Estate of Talbot* (1956) 141 Cal.App.2d 309, 319 [296 P.2d 848, 58 A.L.R.2d 658]) in contradistinction to the demand of a general bank depositor. (Cf. *Union Tool Co.* v. *Farmers etc. Nat. Bank, supra,* 192 Cal. 40 at p. 53.)

The few decisions holding that the no limitation provision was applicable shared the distinguishing feature of an established debtor-creditor relationship through a general deposit of funds. (See e.g., *Bullis* v. *Security Pac. Nat. Bank, supra,* 21 Cal.3d 801 [estate checking account]; *Far West Citrus, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 913 [154 Cal.Rptr. 464] [checking account];

*Bank of America* v. *Cranston* (1967) 252 Cal.App.2d 208 [60 Cal.Rptr. 336] [unclaimed deposits for cashier's, certified and Christmas Club checks, bank drafts and money orders]; *King* v. *Mortimer* (1948) 83 Cal.App.2d 153 [188 P.2d 502] [savings deposits with building and loan association].)

But while the language of the statute must be broadly read to include any *kind* of action "to recover money deposited in a bank" (*Bullis* v. *Security Pac. Nat. Bank, supra,* 21 Cal.3d at p. 813), it does not apply to actions in which the underlying debtor-creditor relationship is absent. (See e.g., *Bell* v. *Bank of California* (1908) 153 Cal. 234, 242 [94 P. 889] [action for return of stock pledged as loan collateral]; *Neustadt* v. *Skernswell* (1955) 133 Cal.App.2d 163, 165 [283 P.2d 787] [an action to partition escrow funds].) The execution and implementation of the express trust herein neither created nor possessed the incidents of a debtor-creditor relationship in which the "depositor" was entitled to payment on demand. Concededly, a debt created by a typical deposit of money may itself constitute part of a trust corpus. (Rest.2d Trusts, § 82, com. a.) Moreover, a trustee is statutorily authorized to "deposit . . . trust funds at interest in any bank (including the trustee, if a bank) . . ." (Civ. Code, § 2261, subd. (3)), a legislative acknowledgement of the distinction between a *deposit* of trust funds and the *holding* of such funds in trust.

Appellants mistakenly rely on the dictum (underscored) in *Merchants Nat. Bk.* v. *Continental Nat. Bk.* (1929) 98 Cal.App. 523 [277 P. 354], where the court stated: "A 'depositor' is one who pays money into a bank in the usual course of business, to be placed to his credit and subject to his check (*State* v. *Corning State Savings Bank,* 136 Iowa 79 [113 N.W. 500]; *Anheuser-Busch Brewing Assn.* v. *Clayton,* 56 Fed. 759 [6 C.C.A. 108]; *Commonwealth* v. *Sponsler,* 16 Pa. Co. Ct. 116), or the beneficiary of a fund held by a bank as trustee (*Kimball* v. *Norton,* 59 N.H. 1 [47 Am.Rep. 171]). (See, also, *Murphy* v. *Pacific Bank,* 130 Cal. 542 [62 Pac. 1059].)" (*Id.,* at p. 530; emphasis added.) In the context of the circumstances involved (suit by a drawee bank against a collecting bank relating to an indorsement), the court simply concluded that the action was not brought by a depositor. No issue relating to the bank's status as a trustee was presented.

Moreover, the court's citation of *Kimball* v. *Norton,* 59 N.H. 1, provides no support for the argument advanced by appellants. In determining that the bank owes a common law duty of care to the holder of a certificate of deposit in properly paying out funds, that court was neither concerned with the status of trust funds nor equating a deposit with a trust.

In conclusion, we hold that the rescission action against Crocker seeking restitution of trust assets does not constitute an action brought by a depositor seeking recovery of funds "deposited with a bank" within the meaning of sec-

tion 348.[9] Accordingly, the untimely action was barred under the applicable provisions of the four-year statute of limitations as correctly determined below. The remaining issue of Crocker's entitlement, if any, to attorney fees on appeal may be determined by the trial court in the exercise of its reserved jurisdiction.

The judgment is affirmed.

Elkington, J., and Holmdahl, J., concurred.

---

[9]We reject appellants' assertion that the trust assets fall within the statutory definition of "Money *or other property.*" (Italics added.) We think the language is intended to encompass check or drafts—the commercial equivalent of money—but not funds held by the bank in a capacity other than as a depositary. (See 9 C.J.S., Banks and Banking, § 267, p. 544.)