Filed 1/20/16  WMC Mortg. V. JPMorgan Chase Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| WMC MORTGAGE, LLC, | C076768 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201300298192CUNPSTK) |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant and Respondent. | |

This case arises out of appellant WMC Mortgage, LLC's unsuccessful effort to retrieve a mortgage-payoff payment made to respondent JPMorgan Chase Bank, N.A. after homeowners, who had been approved for a loan, chose not to refinance with WMC. WMC appeals from a judgment in favor of Chase dismissing the first amended complaint as time-barred.  WMC contends it has adequately alleged that:  (1) its causes of action fall within the open limitation provisions of Code of Civil Procedure section 348; and (2) Chase is equitably estopped from raising a statute of limitations defense.  We conclude that the open limitation period is inapplicable because WMC's action to recover the payment to Chase was not an "action[] brought to recover money or other property

1

*deposited* with [a] bank." (Code Civ. Proc., § 348, italics added.) WMC waited more than seven years to file an action and has not pled facts sufficient to estop Chase from raising a limitations defense. We affirm the trial court's judgment.

## I. BACKGROUND

In an appeal from a judgment of dismissal following an order sustaining a demurrer, "we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether the plaintiff has stated a viable cause of action." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

In 2004, Sergio Montoya, Jr. and Joaquina Montoya executed a deed of trust securing a $373,500 loan in favor of New Century Mortgage Corporation. The loan was subsequently acquired or assigned to Chase. In 2005, the Montoyas took out a second loan in favor of Beneficial California, Inc.

In January 2006, the Montoyas applied and were approved for two refinance loans from WMC totaling $508,000. An escrow was opened to implement the terms of the refinance loan agreement between the Montoyas and WMC. In response to a request from WMC's escrow agent, Chase issued a payoff demand statement specifying that the total amount to satisfy its loan was $389,449.31. The statement from Chase also provided:

"You understand and agree that if [Chase] received and processed a payoff and subsequently is requested to return such payoff funds, due to loan rescission or for any other reason, unless prohibited by law, [Chase] will deduct a re-load fee of $750.00 from the payoff funds that are returned to compensate [Chase] for its time and costs incurred in re-loading such loan into the system."

Escrow closed on March 6, 2006, and payment was wired to and deposited with Chase. "Shortly prior to the close of escrow," the Montoyas notified WMC, but not WMC's escrow agent, that they wanted to cancel the refinance loans. WMC "notified its escrow agent to cancel the transaction, but due to the last minute notification by the

2

MONTOYAS all payments had been sent and all documents had been sent to the San Joaquin County Recorder's Office for recording." The deeds of trust that were intended to secure WMC's refinance loans were recorded the same day, and a reconveyance of the Chase deed of trust was sent to the county recorder's office on March 6, 2006, and recorded on March 31, 2006.

"After the close of escrow, plaintiff and its escrow agent took steps to unwind the transaction, recover all payments and restore title to the state that existed before March 6, 2006." Specifically, WMC's escrow agent informed Chase that the payment that was wired to it was not to be used toward payoff of the Chase loan. The escrow agent also "demanded the return of [WMC's] $388,890.17 payment."

In response, on March 31, 2006, Chase sent a letter stating that it "would agree to reinstate the loan only upon receipt of the following items within the timeframe referenced below.

"1. $750 reinstatement fee[.]

"2. Signed reinstatement request letters from both the borrower and the remitter of the payoff check[.]

"3. Signed and notarized indemnification letter (to follow in separate correspondence)[.]

"4. All additional payments required to bring the loan current at the amount of $4418.42 total[.]

"5. Funds to replace escrow refund check in the amount of $2282.83, if cashed[.]

"6. Reinstate Chase's lien and provide proof that Chase is the first priority lien holder, according to the state and county requirements for the property address (all documents must be approved by Chase prior to filing/recording)[.]

"7. Title endorsement or new title policy in favor of Chase Home Finance LLC."

Items 1, 2, 3, 5, a draft of item 6, and a title commitment for item 7 were to be submitted to Chase within 20 days of receipt of the letter. WMC alleges that it complied

3

with all the terms and conditions set forth in Chase's letter, but Chase never returned the funds.

WMC alleges it "learned for the first time on April 13, 2013[,] that the $388,890.17 that plaintiff's [*sic*] deposited with CHASE was used, without plaintiffs [*sic*] consent or authorization, toward satisfaction of CHASE's loan to the MONTOYAS."

In June 2013, WMC filed an action against Chase and the Montoyas asserting numerous causes of action, including conversion, breach of contract, implied contract/unjust enrichment, recovery of money deposited with a bank, and intentional misrepresentation against Chase. After the trial court sustained Chase's first demurrer, WMC filed its first amended complaint, which is the pleading at issue here. In response, Chase again demurred to all of WMC's alleged causes of action against Chase. WMC dismissed the Montoyas from the action.

Ruling on the demurrer to the first amended complaint, the trial court concluded WMC had failed to allege facts establishing that Code of Civil Procedure section 348 applied. Additionally, the trial court ruled that WMC's complaint "alleges no facts indicating Defendant did anything to prevent Plaintiff from commencing this lawsuit within the proscribed statutes of limitations. Therefore, Plaintiff has not pled facts sufficient to invoke estoppel." The trial court held that WMC did not plead sufficient facts to invoke the delayed discovery rule, and WMC's claims against Chase were otherwise time-barred. The trial court entered a judgment dismissing the first amended complaint with prejudice. WMC filed a timely notice of appeal.

## II. DISCUSSION

A. *Standard of Review*

"It is well established that a demurrer tests the legal sufficiency of the complaint. [Citations.] On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the

4

complaint states a cause of action as a matter of law. [Citations.] We give the [complaint] a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law. [Citation.]" (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869-870; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits. However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff." (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

## B. Code of Civil Procedure Section 348

WMC asserts the trial court erred in holding Code of Civil Procedure section 348 does not apply in this case. The statute provides, "To actions brought to recover money or other property deposited with any bank, banker, trust company, building and loan association, or savings and loan society or evidenced by a certificate issued by an industrial loan company or credit union there is no limitation." (Code Civ. Proc., § 348.) WMC's argues the open limitations period should apply because "deposit" as it is used in section 348 should be construed broadly to include more than a general deposit.

In contrast to WMC's argument, case law construing section 348 has limited its application to situations in which the deposit in question was a general deposit. A general deposit is essentially a loan to the bank, and when the depositor demands it, the bank is obligated to pay the debt reflected by the balance of the deposited funds. (*Morse v. Crocker Nat'l. Bank* (1983) 142 Cal.App.3d 228, 232 (*Morse*).) "It is axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of

5

a debtor and creditor. [Citations.]" (*Ibid*.) The *Morse* court held that section 348 "does not apply to actions in which the underlying debtor-creditor relationship is absent." (*Id.* at p. 233; see also *id*. at p. 231 ["In construing the subject statute, we first analyze the nature of the relationship between a commercial depositor and bank depository to which, we conclude, the statute unmistakably is directed"].) WMC asserts that this language is dicta and that the plain language of the statute applies to all types of deposits, including bailments. We disagree, as this case appears to fit squarely within *Morse*'s holding. Even before *Morse* was decided, courts had suggested that section 348 did not apply to every conceivable definition of a deposit. (See *Bank of America Nat'l. Trust & Savings Asso. v. Cranston* (1967) 252 Cal.App.2d 208, 218 ["[I]t appears that banking practice generally has customarily given to 'deposit' a meaning much broader than that given by the act"].) *Morse* summarized decisions applying section 348 and noted that they all shared the distinguishing feature of an established debtor-creditor relationship through a general deposit of funds. (*Morse, supra*, at pp. 232-233; see, e.g., *Bullis v. Security Pac. Nat'l. Bank* (1978) 21 Cal.3d 801, 806 [estate checking account]; *Far West Citrus, Inc. v. Bank of America* (1979) 91 Cal.App.3d 913, 915 [checking account]; *Bank of America Nat'l. Trust & Sav. Asso. v. Cranston, supra,* at pp. 215-216 [unclaimed deposits for cashier's, certified and Christmas Club checks, bank drafts and money orders]; *King v. Mortimer* (1948) 83 Cal.App.2d 153, 156 [savings deposits with building and loan association].) WMC does not identify any authority applying section 348 outside of a general deposit of funds.

Even if we assume for discussion that section 348 applies to more than traditional deposits, a conclusion we do not accept, WMC has failed to establish that the mortgage payoff payment qualifies as *any* type of deposit under California law. WMC asserts that its payment qualifies as a deposit because it was either originally or later became a

6

deposit for a special purpose/special deposit,[1] an involuntary bailment, or a voluntary bailment.[2]

Significantly, the authorities relied on by WMC to suggest that the payment to Chase was a special deposit do not involve funds that had been transferred *out* of escrow. WMC relies upon a passage from *Bank of America National Trust & Savings Asso. v. California Savings & Commercial Bank, supra*, 218 Cal. at p. 274, which discussed money deposited *into* escrow, to claim that money paid to a bank to discharge a mortgage is a deposit for a special purpose. "Where money is delivered to a bank to be paid over to a third party upon his fulfilment of a contract with the depositor; where the purchase price of land or other property, or money with which to discharge a mortgage, is delivered to a bank in escrow; where a deposit is made to await the outcome of litigation, or, as in the case herein, as security for performance of an obligation of the depositor to a third person, the deposit is held to be a deposit for a special purpose, and the bank has no right to use the amount thereof in its general business." (*Ibid*.) As the trial court correctly noted, this quote describes the appropriate characterization of money that is paid into escrow to be used to discharge a mortgage. (see *Burket v. Bank of Hollywood* (1937) 9 Cal.2d 113, 116 ["[T]he money on deposit in the escrow account at the time the bank closed its doors . . . had been intrusted to it for distribution in accordance with an escrow agreement. Under such circumstances it was a special deposit"].) These cases do not suggest that money that has been released from escrow, in accordance with the

---

[1] These terms are interchangeable. (See *Bank of America Nat'l. Trust & Savings Asso. v. California Savings & Commercial Bank* (1933) 218 Cal. 261, 273-274; *Engleman v. Bank of America Nat'l. Trust & Savings Asso.* (1950) 98 Cal.App.2d 327, 330-331.)

[2] A bailment is called a deposit in our Civil Code. (13 Witkin, Summary of Cal. Law (10th ed. 2005) Personal Property, § 156, p. 168; see also Civ. Code, §§ 1814-1815.)

escrow instructions, can still be characterized as a special deposit. For the reasons explained below, we conclude it cannot.

A review of the differences between a general deposit, a special deposit and a bailment demonstrates why money paid out of escrow does not qualify as any type of deposit. "The generic term ['deposit'] is commonly employed to describe a personal object 'which is placed . . . for safekeeping [or] entrusted to the care of another.' (Webster's New Internat. Dict.; see Black's Law Dict. (4th ed.) stating a similar definition in transitive form; see also Civ. Code, § 1814 (voluntary deposit).)" (*Morse v. Crocker Nat'l. Bank, supra,* 142 Cal.App.3d at p. 231, fn. 6.) "The definitions given of general and special deposits do not differ materially. In *Butcher v. Butler*, 134 Mo. App. 61, [114 S. W. 564], the court said: 'A general deposit is where the bank is given custody of the money deposited with the intention expressed or implied that the bank is not required to return the identical money, but only its equivalent; the legal title to the money in such cases passing to the bank. A special deposit is one where the bank merely assumes charge or custody of the property without authority to use it, the depositor being entitled to receive back the identical thing deposited in which case the title remains with the depositor, and if the subject be money, the bank has no right to mingle it with other funds.' " (*People v. California Safe Deposit & Trust Co*. (1914) 23 Cal.App. 199, 204.) Likewise, "[a] bailment (called *deposit* in the Civil Code) is the deposit of personal property with another, usually for a particular purpose, under an express or implied contract. The purpose may be to use or repair, keep, transport, sell, or exchange it, etc." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Personal Property, § 156, p. 168; see also Civ. Code, § 1814 ["A voluntary deposit is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party"].) In the facts presented here, the money paid to Chase does not fit within any of these definitions.

8

WMC's allegation that its payment to Chase "was initially intended as a special deposit for use in paying-off the CHASE loan" is a legal and factual conclusion we need not accept. (See *City of Morgan Hill v. Bay Area Air Quality Management Dist., supra,* 118 Cal.App.4th at pp. 869-870.) So is the argument that Chase "did not have any right to commingle it with other fund[s] or use it for its general purposes." As the above definitions reveal, the sine qua non of any deposit is an understanding between the parties that the money (either the identical funds or the equivalent, depending on the type of deposit) will be returned upon the depositor's request. Here, the release of the funds does not satisfy this essential requirement. The loan payoff was not intended to be returned, but to satisfy Chase's loan. (See Civ. Code, § 2943, subd. (a)(5) [payoff demand statement "set[s] forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement"].) Additionally, a transaction does not create a bailment when the parties intend it to be something different, such as a sale: "No bailment can be implied where it appears it was the intention of the parties, as derived from their relationship to each other and from the circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee. [Citation.] A transaction is a sale, not a bailment, and title to the property is changed when the receiving party is under no obligation to return the property or to account for it. [Citation.]" (*H. S. Crocker Co. v. McFaddin* (1957) 148 Cal.App.2d 639, 644.) "If there is a transfer of ownership the transaction is a sale." (*Ibid.*) Here, the transaction was a sale of a security interest and not a deposit or bailment.

At the time escrow closed, WMC had completed its purchase of Chase's ownership interest and there was no agreement the transferred funds would ever be returned. The only colorable question is whether, when WMC's escrow agent demanded return of the payment, the fact that Chase agreed to reinstate the loan under certain conditions changed the character of the payment it had already received to be a deposit of

9

any type. We do not think so, and WMC cites no authority that persuades otherwise. While it is true that whether a deposit is considered general or special may change by agreement of the parties (see *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 859), WMC cites no authority suggesting that a simple payment can transform into a deposit or a bailment. Moreover, Chase's offer to reinstate the loan does not explicitly mention returning the payment at all—let alone the exact funds that were originally transferred—and thus cannot be considered an agreement to transform the payment into a special deposit or voluntary bailment. Rather, just as the original transaction is more properly construed as a sale, the communications between Chase and WMC regarding the reinstatement of the loan are more properly construed as reversing the original transaction—not an effort to change the existing relationship between the parties. There was no special deposit or voluntary bailment.

WMC also alleges that its escrow agent's statements to Chase, demanding return of the payment and informing Chase that the payment that was wired to it was not to be used toward payoff of the Chase loan, created an involuntary bailment. Again, we need not accept WMC's conclusions of fact or law. (*City of Morgan Hill v. Bay Area Air Quality Management Dist., supra,* 118 Cal.App.4th at pp. 869-870.) An essential element of an involuntary bailment is that the property was transferred by mistake. An involuntary bailment "is made: [¶] (a) By the accidental leaving or placing of personal property in the possession of any person, without negligence on the part of its owner." (Civ. Code, § 1815.) WMC alleges that when it notified the escrow agent, the funds had already been transferred and the documents had been sent for recording. The escrow had already closed and the transfer of the payment and security interest was intentional at the time. The fact that WMC later informed Chase that the money was to be returned and not used to pay off the Montoyas' loan cannot retroactively transform an intentional transfer into an accidental one. Moreover, "[a]n involuntary bailment is gratuitous, the depositary being entitled to no reward." (Civ. Code, § 1845.) WMC concedes that the alleged

10

bailment was "not a 'gratuitous bailment' " because WMC paid Chase a $750 reinstatement fee.

Even under WMC's broad reading of Code of Civil Procedure section 348, its action to recover the payment to Chase was not an "action[] brought to recover money or other property *deposited* with [a] bank." (Code Civ. Proc., § 348, italics added.) WMC's complaint is not preserved by the open limitation provisions of section 348.

## C. *Estoppel*

WMC also contends that even if section 348 does not apply to its claims, Chase should be estopped from raising a statute of limitations defense. "An estoppel to set up the defense of the statute of limitations arises as a result of some conduct by the defendant, relied upon by the plaintiff, that *induces the belated filing of the action*." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 762, p. 993, italics added.) It is based on the principle that " '[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.' " (*Carruth v. Fritch* (1950) 36 Cal.2d 426, 433.) Estoppel requires that: " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]' " (*Mills v. Forestex Co*. (2003) 108 Cal.App.4th 625, 655.)

WMC contends estoppel is warranted because Chase "falsely represented to Appellant that its payment would be returned," and the complaint "does not allege any facts suggesting that Appellant knew in 2006 that Respondent would not return the money." And yet the complaint alleges repeatedly that Chase "refused" to return the funds. WMC has always known the true fact that Chase has not returned the payment, which is the basis for this litigation. And a mere belief that Chase would return the funds

11

based on its March 2006 letter regarding loan reinstatement is not sufficient to that show that WMC was *induced to postpone the filing of a lawsuit*. (See *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 829 ["Mere allegations that plaintiff believed that 'the check was in the mail' do not establish either ignorance of the true state of facts, or reasonable reliance by plaintiff to his detriment"].) The complaint contains no allegations suggesting it would have been reasonable for WMC to believe that Chase would still return the funds *years* after it sent the March 2006 letter that required most of its conditions to be met within 20 *days*. (See *ibid*. ["Plaintiff provides no indication as to why it was reasonable to continue to believe that promise for more than two years following the expiration of the forty-five-day period when plaintiff's claim was deemed rejected by operation of law"].) "Significantly, plaintiff does not allege that it was encouraged to forestall filing suit on this claim." (*Ibid*.) WMC attempts to justify the late filing of its complaint by alleging that it "learned for the first time on April 13, 2013[,] that the $388,890.17 that plaintiff's [*sic*] deposited with CHASE was used, without plaintiffs [*sic*] consent or authorization, toward satisfaction of CHASE's loan to the MONTOYAS." This allegation is without relevance to this appeal because the payment was not a special deposit or bailment. Regardless of what Chase used the funds for, it never returned them. The trial court correctly noted that the complaint "alleges no facts indicating Defendant did anything to prevent Plaintiff from commencing this lawsuit within the proscribed statutes of limitations. Therefore, Plaintiff has not pled facts sufficient to invoke estoppel."

## III.  DISPOSITION

The judgment is affirmed.  Chase shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____
RENNER, J.

We concur:

/S/

_____
RAYE, P. J.

/S/

_____
ROBIE, J.

13